JOHN W. ADAMS *vs.* JOHN COST and GEORGE W. ROUZER.

*Master and Servant—Tort.*

A master is not responsible for the acts of his servant, unless the latter was engaged in the performance of the service for which he was employed.

Where a person placed his mare at livery, and instructed a servant of the proprietors of the stable, to take her out for exercise, such, however, being no part of the contract of livery, and while the servant had her out for such purpose, she died, the proprietors of the stable cannot be held liable to the owner, though the mare was injured by, and died in consequence of, the immoderate riding, and carelessness of their servant.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Hy. Kyd Douglas,* for the appellant.

*H. H. Keedy,* for the appellees.

YELLOTT, J., delivered the opinion of the Court.

A suit was instituted in the Circuit Court for Washington County by the appellant against the appellees, for the recovery of damages, resulting from the killing of a horse belonging to the plaintiff in the cause. The trial in the Court below terminated in the rendition of a verdict and judgment for the defendants, and the plaintiff has brought the questions involved in controversy, into this Court by an appeal from said judgment.

Adams *vs.* Cost and Rouzer.

The evidence adduced by the plaintiff tended to prove that the defendants were the keepers of a stable at which the plaintiff's mare had been put at livery. The defendants were instructed by the plaintiff not to let the mare go out to any one but himself; and not even on his own written order. On several occasions the plaintiff had instructed Briscoe, a servant of the defendants, employed at the stable, to ride the animal out for exercise, the plaintiff watching him while doing so ; had given him no general directions to ride the horse when he was not present, and had forbidden that to be done. The horse was killed by said Briscoe in running a race with another servant of the defendants while they were going to order a load of hay for defendants' stable.

The defendants offered evidence tending to prove that the plaintiff had repeatedly directed and ordered Briscoe to take the animal out, whenever he had time, to exercise and train her for a saddle horse ; that he wanted this done every day ; that this was no part of the contract of livery, but that the defendants permitted Briscoe to do so as requested by the plaintiff, and after being asked by plaintiff for permission to let said servant exercise the horse for him every day ; that on the day the fatality occurred, Briscoe had taken the animal to exercise without the special consent of the defendants, and on that day went without their knowledge, as he was ordered by the plaintiff; that they permitted their servant Daily to ride one of their horses on that day ; that said Daily started after Briscoe, and that these two servants determined, without the knowledge of the defendants, to go and order a load of straw for the stable, as they had been accustomed to do without previous orders, and that while riding along at a lope the plaintiff's horse fell down and died of heart disease, and that they were not racing.

In rebuttal, the plaintiff's evidence tended to prove an admission on the part of one of the defendants that he had

sent the said servants for a load of straw, and also an admission by Briscoe that the horse had run against a tree ; that the servant Daily had asked permission of one of the defendants to ride one of their horses, which permission was given with an admonition not to stay long ; that Daily overtook Briscoe and they proceeded together until the animal was killed.

The plaintiff offered three prayers and the defendants two.  The first prayer of the plaintiff was conceded, the second was granted, and the third rejected by a divided Court.  The first prayer of the defendants was conceded and the second was granted by the Court.  The plaintiff has excepted to the rejection of his third prayer and to the granting of the second prayer of the defendants ; and these exceptions present the only questions for determination.

The plaintiff's third prayer which was rejected reads as follows :

If the jury believe that the defendants were the proprietors of a livery stable at which the plaintiff's horse was placed at livery for pay, then it was the duty of the defendants to keep safely and take good care of said horse, to employ reliable servants, and not to order or permit said servants to ride or use said horse, without the consent of the plaintiff; and if the jury further find, that the plaintiff did permit and request Briscoe, one of the defendants' servants, to ride his horse for the purpose of exercising him or training him for a saddle horse ; yet if the jury believe, that on the 14th of December, 1882, the said Briscoe took said horse out of the stable, and rode her, not for the purpose of exercising and training her, but either to carry a message and order of the defendants, or to run a race with a horse belonging to the defendants, and ridden by another servant of the defendants, and that while carrying said order and message, or running said race, the horse of the plaintiff was killed, then the plaintiff is entitled to recover.

Adams *vs.* Cost and Rouser.

The second prayer of the defendants is in these words :

The defendants pray the Court to instruct the jury, that if they believe from the evidence that the plaintiff had his mare at the livery stable of the defendants, at board for $16 per month, and that it was no part of their contract, as livery men having said mare at board, to take her out to exercise ; and further find, that the plaintiff gave instructions and direction to Sargent Briscoe, one of the stable hands of the defendants, to take said mare out and exercise her for him, and that in pursuance of such instruction and direction, the said Sargent Briscoe did take the plaintiff's mare out for the purpose of exercising her, then the plaintiff is not entitled to recover, even though they may find that the said mare was injured and died by the immoderate riding and the carelessness and negligence of the said Sargent Briscoe, when he had her out for the purpose of exercising her as aforesaid.

These prayers involve the legal principles applicable to the relation of principal and agent, or master and servant. The doctrine has been settled by numerous adjudications that if the injury, for which the remedy is invoked, resulted from the negligence or misconduct of the servant or agent of the defendant while acting within the scope of his designated duties as such agent or servant, and thus either by the express orders or implied sanction of the principal or master, the defendant is liable. The maxim *qui facit per alium facit per se* is strictly applicable in all such cases. The principal or master is constructively present; the negligence is his negligence, and he is responsible for the resulting injury. *Powell vs. Deveney*, 3 *Cushing*, 305.

In relation to the liability of masters for the acts of their servants it was said in *Ellis vs. Turner*, 8 *T. R.*, 533, "They are responsible for the acts of their servant in those things that respect his duty under them, though they are not answerable for his misconduct in those things.

that do not respect his duty to them." And HOLT, C. J., said in *Middleton vs. Fowler, et al.*, 1 *Salkeld*, 282, that "No master is chargeable with the acts of his servant, but when he acts in execution of the authority given by his master, and then the act of the servant is the act of the master."

In 2 *Rolle's Abr.*, 553, it is said, "If my servant, without my notice, put my beasts in another's land, my servant is the trespasser and not I; because by the voluntary putting of the beasts there without my assent, he gains a special property for the time, and so to this purpose they are his beasts." In *M'Manus vs. Crickett*, 1 *East*, 106, Lord KENYON, referring to the two last cited authorities, observed : "Now when a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and according to the doctrine of Lord HOLT, his master will not be answerable for such act. Such upon the evidence was the present case, and the technical reason in 2 *Roll. Abr.*, with respect to the sheep applies here ; and it may be said, that the servant, by wilfully driving the chariot against the plaintiff's chaise, without his master's assent, gained a special property for the time, and so to that purpose the chariot was the servant's. This doctrine does not militate with the cases in which the master has been holden liable for the mischief arising from the negligence or unskilfulness of his servant who had no purpose but the execution of his master's orders."

In *Coleman vs. Riches*, 16 *C. B.*, 104, it was held, that a master is responsible for the negligence of his servant acting in the course of his employment, but not for an act of negligence done by him out of the scope of his authority. And in *Lyons vs. Martin*, 8 *Adolphus & Ellis*, 512, it is said that a master is liable for damage resulting from his servant's negligence in doing a lawful act in the course of

his service, but not so if the act is in itself unlawful, and if not *proved* to be authorized by the master. And it has been held that if a servant is employed to do a lawful act, and, in doing it, he commits a public nuisance, the master is not responsible. *Peachey vs. Rowland & Evans,* 13 *C. B.,* 182. This doctrine is, however, limited and controlled by the very obvious qualification, that if the act to be done, necessarily involves the committing of a public nuisance, the master is liable. So in all cases where a wrongful act is done by the authority of the master. *Ellis vs. Sheffield Gas Consumers' Company,* 2 *Ellis & Blackburn,* 767. But where the act is done by the servant in pursuing his own objects, lying beyond the sphere of his proper duties as a servant, the master is not liable. Thus it has been held in *Joel vs. Morison,* 6 *Carrington & Payne,* 501, that if a servant takes his master's cart without leave, at a time when it is not wanted for the purpose of the business, and drives it about solely for his own purposes, the master will not be liable for any injury which he may do. And where a carman, without his master's permission, and for a purpose of his own, wholly unconnected with his master's business, took out his master's horse and cart, and, on his return, ran against a cab, it was held that the master was not liable for the injury thus resulting from the servant's negligence. *Rayner vs. Mitchell,* 2 *L. R. C. P. D.,* 357.

Chancellor KENT announces it, as an established principle, that a master is not answerable for the tortious acts or misconduct of his servant in those things which do not concern his duty to his master, and are not done in the course of the service, 2 *Kent's Comm.,* 284. In *Wright vs. Wilcox,* 19 *Wendell,* 343, the same principle is enunciated; and in *Foster, et al. vs. The Essex Bank,* 17 *Mass.,* 478, which was a case of bailment, and where the loss resulted from the act of the bailee's servant, it was decided that "a bailee for hire or reward will not be liable if the goods are stolen,

if he shows that he used due care in the keeping of them." In this case Chief Justice PARKER, in his very learned and elaborate opinion, speaking of bailment for hire and reward, says: "The principle applicable to this species of bailment goes no further than to make the bailee liable in case of ordinary neglect; so that if he shows that he used due care, and nevertheless the goods were stolen, he is excused." And he further adds, "This is the doctrine of Sir WILLAM JONES, and was the opinion of Lord KENYON in the case of *Finnucane vs. Small.*"

It has been repeatedly decided in the Courts of the United States, that the obligation imposed on a bailee for hire is that of ordinary care and diligence. *Reeves, et al. vs. The Constitution,* 1 *Gilpin,* 585 ; *Bank of Kentucky vs. Adams Express Co.,* 1 *Flippin,* 256.

If a bailee employs others to transact the business entrusted to him, it has been held that his liability only extends to the injury resulting from the negligence of such persons while acting within the scope of their designated duties. If the injury complained of has been occasioned by the misconduct of the agents or servants of the bailee, while not engaged in the performance of the service specially assigned to them by the bailee, the latter is not responsible in damages for any loss resulting to the bailor from such misconduct. *White vs. Commonwealth Nat'l Bank,* 4 *Brewster,* 234; *Pelham vs. Pace, Hempstead,* 223.

There has never been any deviation from the doctrine established by the authorities referred to, and the citation of other cases, for the purpose of demonstrating the universality of its recognition would seem to be a mere work of supererogation. The decisions already cited are declaratory of a fundamental rule of the common law, which, unlike positive regulations emanating from an exercise of legislative authority, is a system of jurisprudence that, by adopting the language of a very able and eminent writer

on the subject, can be accurately defined as "consisting of principles, which, although not properly susceptible of that expansion *which works a change in the principle,* are not restricted and tied down by the circumstances of their prior application, but do admit of that expansion that *merely displays the hitherto unapplied capacity of the principle.*" In the cases to which reference has been had there is an exposition of the legal relations of master and servant. The principle enunciated is that a master is not responsible for the acts of his servant unless the latter was engaged in the performance of the service for which he was employed. When we come to its application, in the pending controversy, we discover a very different category of facts from those presented in *Rolle's Abrdg.,* and yet the principle is clearly applicable. In the defendants' second prayer, to the granting of which an exception has been taken, it is left to the jury to find whether the servant of the defendants was, at the time when the injury occurred, acting under the instruction and direction of the plaintiff. If this question of fact should be determined in the affirmative by the jury, then by no process of ratiocination could it be made demonstrable that he was acting under the authority of the defendants. On the contrary, we are irresistibly and logically led to the conclusion that he was then acting independently of that authority, and consequently not within the limits of his assigned employment as the defendants' servant. Then the principle enunciated in *Rolle's Abridg.,* in 1 *East,* and in the other cases cited strictly applies. As this fact was properly left for the ascertainment of the jury, there was no error committed by the Circuit Court in granting the defendants' second prayer. If the facts hypothetically stated in this prayer were believed by the jury the defendants were not liable for the injury alleged in the declaration.

The third prayer of the plaintiff was properly rejected. He had already obtained all the instructions he was enti-

tled to in his first and second prayers, and this third prayer is apparently only a reproduction of those instructions. Its phraseology, moreover, renders it objectionable, because of its probable tendency to confuse and mislead the jury. There cannot, therefore, be a reversal of the judgment because of the rejection of this prayer by a divided Court.

*Judgment affirmed.*

(Decided 18th June, 1884.)

ALVEY, C. J., delivered the following opinion:

I quite agree to the affirmance of the judgment in this case, but for other reasons than those assigned in the opinion of my brother YELLOTT. The action is for an alleged breach of a contract of bailment. The plaintiff's horse was put at livery to be safely kept, dressed and fed, in the stable of the defendants, for a certain price per month; and the alleged breach of the contract is, that the horse was allowed to be taken out of the stable by one of the hands or employés of the defendants about the stable, who rode the horse to death. There is no dispute in regard to the contract, or in regard to the fact that the horse was taken out of the stable and ridden to death by one of the employés of the defendants. But the defence is that the horse was taken out and ridden by the servant under the direction, and by the authority, of the plaintiff, and not of the defendants; and that being so, they, the defendants, are not responsible for the consequences of the servant's negligence or recklessness in riding the horse to death.

The defendants as bailees, were certainly responsible for the want of good faith in the keep of the horse, and for any want of reasonable care and diligence in that respect; and as the negligence of the servant, acting under the master's directions, express or implied, is the negligence of the master, it follows, that if the servant em-

ployed to attend to the horse by the defendants, injured or killed it by riding it immoderately, the defendants must make compensation for the loss. *Jones on Bailm.*, 89; *Coggs vs. Bernard*, 2 *Ld. Raymond*, 916. In *Jones on Bailment*, page 91, the learned author, in discussing the doctrine of Bailment *Locatio custodiæ*, says, "if a horse be delivered either to an agisting farmer for the purpose of depasturing in his meadows, or to an hostler to be dressed and fed in his stable, the bailees are answerable for the loss of the horse, if it be occasioned by the ordinary neglect of themselves or their servants. It has, indeed, been adjudged, that, if the horse of a guest be sent to *pasture by the owner's desire*, the innholder is not, as such, responsible for the loss of him by theft or accident;" and the author cites *Calye's Case*, 8 *Co.*, 32, where it was held, that if the horse of a guest at an inn be stolen, the innkeeper is not liable if the horse were put to pasture at the *guest's request;* but otherwise if the innkeeper had put the horse to grass of his own head. And while the liability of an innkeeper is very different from that of an agister or livery-stable keeper, yet the rights and liabilities of the parties in this case are well illustrated by what was decided in *Calye's Case.* The obligation of the defendants was to take reasonable and proper care of the horse while entrusted to their care as liverymen (*Smith vs. Cook, L. R.,* 1 *Q. B. Div.*, 79; *Sargeant vs. Stack*, 47 *Vt.*, 674); but though such was their obligation, if the plaintiff himself interposed, and gave special directions to the servant, as to the manner of treating the horse, conferring authority to ride and exercise it, a service that the defendants had not assumed, and that it was while acting under such special authority that the accident occurred, the defendants as liverymen clearly would not be responsible. In such case the servant in charge of the horse would not be the servant of the defendants, but that of the plaintiff, *pro hac vice.* But on the other hand, if the horse was taken out

and ridden, upon the occasion of its death, by the authority, express or implied, of the defendants, or that its being taken out and ridden was by reason of the want of ordinary care and diligence in the keep of the horse, by the defendants or their servants, then the defendants would be liable for the loss of the horse.    And these propositions, we think, were fully submitted to the jury in the instructions that were granted by the Court below.

The first and second instructions given by the Court, at the instance of the plaintiff, would seem to have embraced the entire ground upon which the plaintiff's claim to recover could rest, under the facts of the case.    And therefore the rejection of the third prayer of the plaintiff, even conceding that it was otherwise free from objection, was not erroneous, because the legal propositions involved in it were embraced in the instructions actually given. Its rejection, therefore, could work no injury to the plaintiff. And as to the second prayer offered by the defendants, which was granted, that simply enunciated distinctly the principle that if the plaintiff interposed to give special directions and authority to the servant for service beyond that assumed by the defendants, as to the treatment and use of the horse, and it was in the exercise of that authority that the accident happened, the plaintiff could not recover ; and clearly there was no error in granting that instruction.    It follows from these views that the judgment ought to be affirmed.

Judges MILLER, ROBINSON, and STONE concur with me in thus disposing of the case.