## BIGGER v. ACREE.

### Opinion delivered September 21, 1908.

1:  BAILMENT—NEGLIGENCE—DEGREE OF CARE.—In keeping animals committed to his charge for hire, a livery stable keeper is required to use ordinary care, which is that degree of care which a person of ordinary prudence would take of the property under the same circumstances if it were his own. (Page 320.)

2.  SAME—LIABILITY OF LIVERYMAN.—Where a liveryman tied a horse in a stall in the customary manner, and in the same manner that its owner had tied it earlier in the same day, and the horse broke loose and was injured, the liveryman was not liable for its injuries. (Page 321.)

Appeal from Randolph Circuit Court; *John W. Meeks,* Judge; reversed.

*Witt & Schoonover,* for appellant.

A livery stable keeper is not an insurer of the property placed in his charge, but is held only to that degree of care for its safety which a person of ordinary prudence would exercise under the circumstances if it were his own. 72 Ark. 572. He is not liable for injury to the property unless that injury results from his own negligence. There is no proof of negligence here.

If he were negligent, he would nevertheless not be liable for the death of the animal unless it be shown that the negligence was the proximate cause of the death. 69 Ark. 402.

*Henderson & Campbell,* for appellee.

Knowing the disposition of the mare, it was incumbent on appellant in the exercise of ordinary care to tie the animal in such way that she could not break loose, or to bar the stall so that she could not get out. Failure to do so was negligence on appellant's part. That the animal died from the effects of the injuries received is settled by the evidence and the jury's verdict. The verdict, being supported by evidence will not be disturbed. 76 Ark. 327; 75 Ark. 262; 73 Ark. 383; 67 Ark. 401.

HILL, C. J. Acree ran a hack between Maynard and Pocahontas, arriving each day at Pocahontas about eleven o'clock in the forenoon and departing at about one o'clock in the afternoon. He had two teams and alternated in the use of the same, leaving one in the livery stable of Bigger at Pocahontas while he was using the other. Pittman was hostler for Bigger, and was in charge of the stable. When Acree came in each day, he tied the horses in the stalls himself or Pittman did so. At the time in question, Acree brought in his team and tied them in their stalls himself. In the afternoon of that day, Pittman took the team out to water them, and returned them to the stable and tied them in the same manner that Acree had tied them. In the night Pittman heard a noise, and going in the stable found that one of Acree's horses was loose and standing in another stall. He tied it in that stall with the same rope that it had been previously tied with in the other stall. He did not at that time discover that the horse was injured; but the next morning he discovered that it had been hurt, apparently kicked on the leg, and he felt sure it had been kicked by its mate, as it was the only other horse in the stable. He and Acree treated the horse for several days, when it died. Acree brought suit against Bigger for the value of the horse, alleging that it had been injured, and died as a result thereof, through the negligence of Bigger in permitting the horse to run loose in the stable among other horses confined therein, as a result of which it had been kicked and injured, from which injuries it died. Bigger denied negligence,

and the case was tried upon this issue, resulting in a verdict for Acree; and Bigger has appealed.

The only testimony as to the care of the animal was that of Pittman, called by the plaintiff. He testified that he tied the mare in the stall with the same rope and in the same manner that the owner had tied it earlier in the same day, and that this was the usual way that it had been tied theretofore; that this mare had been in the habit of breaking loose at night, and he used a small rope with which to tie her, for the reason that if a larger rope had been used she might have broken her neck or choked herself to death. That he had not tied a rope or chain at the rear of the stall to prevent her from backing out for the reason that he did not think it necessary, nor was it customary in the livery business—with which business he testified he was familiar. The rope with which she was tied was either half-inch or three-quarter inch rope, and was sufficient to hold any ordinary animal.

A livery stable keeper for hire is required to use ordinary care of the animals committed to his charge. And he is liable for the injuries to horses placed in his charge when, and only when, such injuries are occasioned by negligence on his part. "The ordinary care required, according to the familiar definition, is that degree of care which a person of ordinary prudence would take of the property, under the same circumstances, if it were his own." 19 Am. & Eng. Enc. 432. See, also, where the same principles were announced: *Swann* v. *Brown,* 51 N. C. 150, s. c. 72 Am. Dec. 568; *Weick* v. *Dougherty,* 90 S. W. 966, s. c. 3 L. R. A., N. S. 348 and note; *Adams* v. *Cost,* 62 Md. 264; *Hunter* v. *Ricke,* 127 Ia. 108; 25 Cyc. 1512.

In the case of *Lockridge* v. *Fesler,* 37 S. W. 65, the Court of Appeals of Kentucky had before it a case quite similar to this one. A horse, entrusted to a livery stable, had slipped his halter and escaped, and was killed. The defense was that the horse was hitched in the usual and customary manner in the stable; that the owner saw the manner in which the horse was hitched and placed, and did not object thereto; and that the horse was properly hitched, but, being breachy and restless, slipped its halter and escaped, without any carelessness or negligence on the part of the defendant or his employees. It was held that these facts constituted a defense.

This case cannot be distinguished from that one, and the principle of it is correct and in consonance with all the authorities on the subject. Under the undisputed evidence in the case, the horse was cared for in the usual and customary manner of caring for horses in livery stables; and in the same manner that the owner cared for this horse in this stable. To hold the livery keeper liable under this evidence would be to make him an insurer of the safety of animals in his stable, and that is not the law.

Judgment reversed and cause remanded.

Mr. Justice WOOD is also of opinion that the evidence is insufficient to show that the death of the animal resulted from the injury received.