## CALDWELL *v.* NICHOL.

Opinion delivered January 30, 1911.

1. EVIDENCE—DECLARATION OF AGENT.—In an action against the keeper of a livery stable to recover damages for injury to plaintiff's horse caused by defendant's negligence, it was error to permit plaintiff to prove a statement made to him by defendant's servant the morning after the injury was received, which tended to prove how the horse was injured, as such statement was not made in the scope of his authority as agent, and was not part of *res gestae.* (Page 422.)

2. BAILMENT—LIABILITY OF LIVERYMAN.—The degree of care which a liveryman is required to take of an animal intrusted to his care is merely that degree of care which a person of ordinary prudence would take of the property under the same circumstances if it were his own. (Page 422.)

3. INSTRUCTION—APPLICATION TO EVIDENCE.—An instruction based on facts not shown by the evidence was properly refused. (Page 423.)

4. LIVERY STABLE—LIABILITY OF LIVERYMAN—DEFENSE.—The fact that, within the owner's knowledge, a horse had been kept for a long time in the stall in which he was injured did not estop the owner from asserting negligence on the part of the liveryman in furnishing a defective stall, nor did the owner assume the risk therefrom. (Page 423.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; reversed.

*Crawford & Hooker,* for appellant.

1. Under the undisputed evidence the court should have directed a verdict for the appellant. The law holds a livery stable keeper only to the use of ordinary care of the animals placed in his care, and he is liable for injuries to such animals only when such injuries are occasioned by his negligence. 87 Ark. 318-20; 37 S. W. 65. Appellee not only knew what kind of stall the horse was kept in, but he had himself selected it, and had kept it there for two years before appellant leased the stable.

2. The court erred in admitting hearsay evidence, in that appellee was permitted to state before the jury what the negro he found at the stable said about the accident. It was not admissible as a part of the *res gestae.* 3 Wigmore on Evidence, §§ 1751, 1749, 1750.

*White & Alexander,* for appellee.

1. There was sufficient to go to the jury, and their verdict on conflicting testimony should not be disturbed. 73 Ark. 377; 75 Ark. 111.

2. Testimony as to what the negro said was properly admitted. He was in charge of, and the only person in, the stable at the time the accident occurred. 66 Ia. 622.

McCULLOCH, C. J. The defendant, D. A. Caldwell, is the keeper of a livery stable in the city of Pine Bluff and stabled the plaintiff's horse for hire. The horse had been kept in the same stable and in the same stall before defendant purchased the stable. Early one morning, before daybreak, the horse was found with a broken leg, and had to be killed, as the veterinarians who were called in decided that the fractured limb could not be successfully treated.

The plaintiff sues to recover the value of the horse, alleging that the injury occurred by reason of negligence on the part of defendant in failing to keep the horse in a suitable stall. The stall was provided with a lattice gate about four feet high, being about 12 or 15 inches above the floor, the lattices being several inches apart, so that a horse's foot could go through the spaces between, and it is alleged in the complaint that the negligence of the defendant consisted of having a gate of that kind swung above the ground in the manner indicated, and that, by reason of such improper construction of the gate and the distance from the ground, the horse got his foot under the gate or through the opening between the lattices, and, in trying to free himself, broke his leg. The defendant answered, denying the charge of negligence in the construction of the gate and denying that the horse was injured by getting his foot hung under the gate or through the openings therein. A jury trial resulted in a verdict for the plaintiff, and defendant has appealed.

No witness who testified in the case saw the horse in the position it was in when first discovered with the fractured limb. A negro named Tow Morrow, who was night-watchman in the stable, first discovered the horse's condition and reported it by telephone to Dr. Smith, a veterinary, and the latter reported the matter to the plaintiff and defendant. Dr. Smith was the first to get to the stable, and he found the horse stand-

ing outside of the stall and in another part of the stable. The leg was broken above the hock—a compound fracture. There were no scratches nor bruises on the horse except the broken skin where the bone protruded, and there appeared to be no hair rubbed off at any place. It was largely a matter of speculation among the witnesses as to the precise manner in which the leg came to be broken. The theory of the plaintiff was that the horse got his foot or leg through one of the spaces between the lattices, and, in trying to free himself, fell and broke his leg. The plaintiff disclaimed any contention that the horse got his leg under the gate.

The theory of the defendant was that the horse, in some manner, fell on his leg in getting up, and broke it, and then fell on the gate and broke that. The testimony adduced by defendant tended to show that the gate was mashed down, the upper hinge having been entirely broken off, appearing to have been mashed downward, and the gate was swinging on the lower hinge, which was also to some extent bent downward.

The plaintiff was permitted, over defendant's objection, to testify that when he got to the stable that morning he asked Tom, the watchman, "How did you find that gate?" and that the latter replied, "I found that gate on top of the horse." This is assigned as error. The statement was prejudicial to defendant, for it tended to establish plaintiff's theory of the case and to refute the defendant's theory that the horse fell on the gate and broke it down in trying to get out of the stall after his leg was fractured. The statement was inadmissible as a part of the *res gestae,* and it was not competent as an admission of defendant's agent, not being made in the scope of his authority. *Stecher Cooperage Works* v. *Steadman,* 78 Ark. 381.

The law applicable to this case has been announced by this court in *Bigger* v. *Acree,* 87 Ark. 318, as follows:

"A livery stable keeper for hire is required to use ordinary care of the animals committed to his charge. And he is liable for the injuries to horses placed in his charge when, and only when, such injuries are occasioned by negligence on his part. The ordinary care required, according to the familiar definition, is that degree of care which a person of ordinary prudence

would take of the property, under the same circumstances, if it were his own."

We are of the opinion that the circuit court submitted this case to the jury upon instructions in harmony with the above announcement of the law, and that the evidence was sufficient to justify a submission to the jury of the question whether or not the defendant was guilty of negligence in failing to exercise ordinary care in providing a reasonably safe stall in which to keep the horse.

The following instruction, asked by defendant, was, we think, properly refused: "If you find from the evidence that the plaintiff selected the stall in which the horse was kept, or that he had been having the horse kept in the same stall, or in one of the same kind with the same kind of gate, while the stable was run by a former stable keeper, then the plaintiff cannot recover, even if the horse did get his leg broken by getting it through or under the gate." There was no evidence that the plaintiff selected the stall. It was the duty of the defendant, under his contract as bailee, not the plaintiff, to select and provide the place in which the horse was to be kept and to exercise ordinary care in providing a reasonably safe place, and the fact that the horse had been kept for a long time in the stable where he was injured did not estop him to assert negligence on the part of defendant, and his knowledge as to the kind of stall did not put him in the attitude of assuming the risk of the danger. He was not called on to determine whether or not the place was safe, for that was the business of defendant. If he had actually selected the stall with that kind of a door, he might be estopped by his own choice of the particular place where his horse was to be kept; but, as already stated, there is no evidence of his having made the selection. On the contrary, he testified that he made complaint to defendant concerning the stall.

For the error, however, in admitting improper testimony, the judgment is reversed and the cause is remanded for a new trial.