This was a special action on the case, brought to recover damages for an injury done to a negro slave, the property of the plaintiff, by the overseer of the defendant.
The facts of the case were substantially as follows: Plaintiff hired a negro man, named Willie, to defendant, who was a miner, to be employed as a laborer in the mine. Defendant had an overseer by the name of Massey, under whom the said Willie and other hands were placed, Massey having the control and management of the said Willie and the other hands. On a certain morning Willie went to work at the mine, but early in the day quit his work, came to the negro house, where he usually lodged, and alleged that he was sick and unable to work. Massey, the overseer, missed him at the mine and followed him to the house, and attempted to tie him, for the purpose of correcting him. Willie offered to submit to correction, but said he did not wish to be tied. The overseer insisted on tying him, and succeeded in tying one arm, on which Willie made some move towards the door, as if he would escape. Upon this, Massey took up a piece of wood, about 3 feet long and 3 inches in diameter, and gave him a violent blow on the left side of the head, and knocked him down, where he remained until the next day. (306) A physician, who was sent for, stated that he found Willie lying on the floor speechless; that there was a large fracture or indentation of the skull, and his whole right side was paralyzed; that he expected him to die in a short time; but that, after a few days, he began to get better, and so continued until he ceased to attend him; and about three months after he received the injury he was sent home to his master. The condition of the negro after that time was proved by other witnesses.
Defendant's counsel contended that defendant was not liable, because the blow inflicted by Massey was a trespass with force and arms, and not injury resulting from negligence. And as the defendant was not present when the blow was inflicted, and discharged Massey as soon as he was informed of it, he was not liable to the plaintiff.
The court charged the jury that Massey, being the overseer of the defendant, and having by his authority the control and management of *Page 210 
the slave, Willie, had a right as overseer to correct the slave in a reasonable manner, in order to reduce him to submission to his lawful commands; but if in doing so he negligently or carelessly used an instrument wholly unjustifiable for reasonable correction, and a permanent injury to the slave was thereby inflicted, the plaintiff was entitled to recover for the injury he had sustained.
The jury found a verdict for the plaintiff, and from the judgment thereon the defendant appealed.
We concur in the opinion of the judge below. The only question is as to the relation in which the defendant stood towards Massey, the man who inflicted the blow. The case is, shortly, (307) this: The defendant was the owner of a mine, which he worked, and employed as his overseer the man Massey. Plaintiff hired to him a negro boy as a hand to work in the mine. Massey, for some alleged offense on the part of the boy, was about to correct him, when, being tied, the boy made a motion to escape, when Massey struck him on the side of the head with a piece of wood about 3 feet long and between 2 and 3 inches thick. Massey was defendant's manager, or overseer, and for every injury which he does to the property of another, entrusted to his care, in carrying on the business of the defendant, which is the result of carelessness, ignorance, or want of skill, the latter is answerable. Massey had a right to correct the boy, Willie, and compel him to do his work. The boy had left the mine without permission, under the allegation of being sick. Whether he was in a condition to labor, Massey was the judge, and, at the time, the sole judge, and it is but just to suppose that, in the effort to punish the boy, he was satisfied that sickness was feigned by him. The act, therefore, of whipping or chastising the boy was, on the part of Massey, a lawful one, to the extent of compelling him to work, and the owner of the boy has no right to complain; but in the correction it was his duty to do it properly; that is, in a proper manner and with a proper instrument. If he was negligent or guilty of a want of care in either particularly, he is answerable for any permanent injury resulting to the boy. True, Massey was guilty of great negligence in the use of an instrument calculated not to correct, but to kill. The responsibility, however, is not confined to Massey, but extends to his employer. He was his selection, held out by him to others as a man to whose skill and discretion slaves could safely be entrusted in carrying on the mining business, and the work was done for him. And *Page 211 
the blow which caused the mischief was given by Massey in performance of the defendant's business, and to compel an attendance to it. It is not like the case of a servant who, in driving his master's (308) carriage, voluntarily, and of his own head, leaves the track he is in and runs over a man. The master, there, is not answerable, for the plain reason that, in committing the trespass, the servant was not doing the business his master had put him about. Here Massey was doing the very thing for which the defendant had employed him, to wit, overseering the hands and compelling them to do the work in which they were engaged. In executing his duty he was, in using the instrument he did, guilty of great negligence and want of care, for which the defendant is answerable.