SCHULTZ, Guardian *ad litem,* Respondent, vs. LA CROSSE CITY RAILWAY COMPANY, Appellant.

*October 17—November 5, 1907.*

*Master and servant: Injuries by servant to third persons: Evidence: Scope of employment: Appeal and error: Affirmance and reversal: Damages: Proximate cause: Excessive damages.*

1. In an action by a minor for injuries alleged to have been caused by a kick administered by defendant's servant, while the evidence, stated in the opinion, tended to cast doubt upon plaintiff's testimony as to being kicked by such servant while acting within the scope of his employment, a verdict for plaintiff is *held* to be so supported by credible evidence as to facts not intrinsically improbable as to prevent a reversal.

2. In an action by a minor for injuries alleged to have been caused by a kick administered by defendant's servant, the evidence, stated in the opinion, is *held* to be sufficient to sustain a finding that the kick was the proximate cause of plaintiff's condition complained of.

3. In an action by a minor for injuries alleged to have been caused by a kick administered by defendant's servant, while the evidence failed to show with certainty any serious permanent injury, the court upon the whole evidence was unable to say that $3,266.66, the damages assessed by the jury, were excessive.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This action was commenced November 14, 1905, to recover damages for personal injury alleged to have been sustained by the plaintiff being kicked from the defendant's car May 18, 1905, by one of the servants of the defendant while acting within the scope of his employment. The answer was a general denial. At the close of the trial the jury returned a general verdict wherein they found for the plaintiff and assessed his damages at $3,266.66. Judgment was thereupon entered in favor of the plaintiff and against the defendant for the amount stated and costs. Thereupon the defendant, before the adjournment of the term at which

the cause was tried, moved the court in writing to set aside and vacate said judgment and set aside and vacate said verdict and grant a new trial upon the minutes of the court, for the reasons that the court erred in denying its motion for a nonsuit or to direct a verdict for the defendant, or in not holding that the verdict is contrary to the evidence, in admitting evidence and rejecting evidence, and because the damages are excessive, which motion was in all things denied and overruled. From the judgment so entered the defendant appeals.

For the appellant there was a brief by *Woodward & Lees,* and oral argument by *G. M. Woodward.*

For the respondent there was a brief by *A. E. Bleekman, Jr.,* and *Humphrey Barton,* and oral argument by *Mr. Barton.*

CASSODAY, C. J. 1. We find no reversible error in admitting or rejecting testimony nor in charging or refusing to charge the jury. In fact there is no serious claim that the judgment should be reversed on any such ground. The principal contention of the defendant is that the judgment should be reversed because upon the whole evidence, and particularly upon the lack of proof that the man charged with inflicting the injury was at the time a servant of the defendant acting within the scope of his employment, and the overwhelming presumption from admitted facts, the assault upon the plaintiff, if committed at all, was not for the purpose of protecting the defendant's property from trespass. Upon those questions the court charged the jury, at the request of the defendant:

"If you find from all the evidence that the plaintiff was kicked at the time and place alleged, and that the person who kicked him was an employee of the defendant street car company, you must find in favor of the defendant, unless you also find that such person was at the time acting in the scope of his employment. If you find that such person did

the act complained of because of his savage and brutal disposition or because of a grudge or hatred of the plaintiff, and not for the purpose of protecting defendant's property or carrying out any duty which he owed to defendant by reason of his employment, then such person was not acting within the scope of his employment, and your verdict should be for the defendant."

The situation and business of the defendant at the place where the alleged assault was made, as shown by the evidence, is stated by its counsel to the effect that it was at the north-side car barn, situated about one mile north from the south-side barn, where the power house and main barn were located and where cars in constant use were kept and repairs made and to which men reported; that no office, shop, or repair men or other employees were stationed at the north-side barn, which was used solely as a storage place for cars not in regular and constant use; that motormen and conductors had nothing to do with cars stored there, and had no occasion to go there except to shove in cars which were no longer required for immediate service and to take them out and away when needed for service; that, when extra cars or trailers were needed for public service, a motor car was sent from the south-side barn to take them out and bring them down to put in service. When no longer needed, a motor car was sent back with them and they were put in the north-side barn, which was usually done at the close of the day's work; otherwise neither motormen nor conductors had anything to do at that north-side barn. Cars going north passed in front of that barn every ten minutes, and any employee of the defendant having occasion to go to that barn or north of it had the privilege of riding free upon such cars. In charging the jury as to what took place at the time of the alleged injury the court stated:

"There is evidence tending to show that there were three men about the car in question and that each man was dressed in a blue uniform and each wore a blue cap; that the three

men were pushing the car part of the time in question; that the plaintiff went upon the car and was standing there when one of these three men went upon the car and kicked the plaintiff and caused him to fall to the ground from the position where he had been standing. There is evidence on the part of the servants and employees of the defendant railway company tending to prove that the witnesses who were called upon the part of the defendant were the only persons engaged at any time on the 18th of May, 1905, in and about the handling or running of cars on what is known as the North Side, during the 18th day of May, 1905, or about that time, and each one of these witnesses testifies that no one of them kicked, or in any manner removed, the plaintiff from any car whatsoever."

The plaintiff was only a little more than eight years of age at the time of the alleged injury. He testified to the effect that between 4 and 5 o'clock on the afternoon of May 18, 1905, he went to the north-side barn in question; that the barn doors were then open; that after about half an hour three men in blue uniforms, like street-car men, came walking up from South La Crosse and moved some of the cars out onto the track; that as they were pushing one of them back into the barn the plaintiff got onto the running board on the south side and was kicked off by one of the three men mentioned. The plaintiff was corroborated by another boy, who was twelve years of age at the time, and by still another boy, who was thirteen years of age at the time, who saw the plaintiff fall off the car and onto the ground but did not see the kicking. One of them testified that when the plaintiff was kicked he said nothing and made no outcry. The testimony of the plaintiff and the members of his family tended to prove that when the plaintiff got home that evening he was lame; that when asked what was the matter he said he got hurt; that nevertheless he was then sent by his mother for some goods to a store six blocks away; that the alleged injury was on Thursday; that he continued lame and complained of pain until Sunday, when in bathing him his

mother casually discovered a black and blue spot on his hip, and when asked how he got it he stated for the first time that he had been kicked; that he continued to grow worse, but no physician was called until about three months after the alleged injury. No complaint was made to the defendant until about the 1st day of November, 1905, when the plaintiff's attorney made claim for damages.

There is some discrepancy between the plaintiff's witnesses as to the precise circumstances under which the alleged kicking took place. One of the rules of the defendant in evidence is that "any person caught stealing a ride on a car must never be pushed therefrom while it is in motion." The several conductors and motormen of the defendant and other officials and employees of the company gave testimony tending to prove that no such kicking was likely to have occurred, but their testimony was all of a negative character, as none of such witnesses claimed to have been present at the time and place of the alleged kicking. While there is much evidence tending to cast doubt upon the testimony of the plaintiff as to being kicked by a servant of the defendant while acting within the scope of his employment, yet we cannot say as a matter of law that the finding of the jury in that respect is not supported by credible evidence as to facts not intrinsically improbable. *Hardy v. Milwaukee St. R. Co.* 89 Wis. 183, 61 N. W. 771; *Adams v. C. & N. W. R. Co.* 89 Wis. 645, 62 N. W. 525; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 361, 77 N. W. 714; *Bading v. Milwaukee E. R. & L. Co.* 105 Wis. 480, 81 N. W. 861.

2. The question recurs whether the kick mentioned caused the injury complained of. The medical testimony on the part of the plaintiff was given by Dr. Egan, who was first called to attend the plaintiff as a physician April 12, 1906, nearly a year after the alleged injury. He found the plaintiff complaining of pain in his right hip, the one that he claimed was kicked, and upon examination he found a large

tubercular abscess on the anterior surface on the right side, which he opened and let the pus out, and he testified as an expert to the effect that such blow or kick sustained May 18, 1905, might cause such a condition and probably would be the producing cause, in the instant case, in the absence of any other known cause. Such evidence seems to be sufficient to sustain a finding that such kick was the proximate cause of the plaintiff's condition complained of.

3. Counsel contends that, in any view of the case, the damages are excessive. The plaintiff was only eight years of age at the time of his alleged injury. The court properly charged the jury that the plaintiff was not entitled to anything for loss of earnings or wages up to the time he became twenty-one years of age, for the simple reason that the same belonged to his father. The court further charged the jury that, in order to recover damages on the ground that such injury was permanent, the evidence must show such permanency with reasonable certainty and that such permanency will continue after the plaintiff has become twenty-one years of age. The defendant contends that there is no evidence to support a finding of permanent injury. The plaintiff's expert, Dr. Egan, had treated the plaintiff for five months at the time of the trial. He testified to the effect that the plaintiff was not yet on his feet, but was getting better; that he had had no pain for weeks; that he thought the plaintiff would be able eventually to get on his feet; that he had improved much more rapidly and with much better results than he had expected; that in the beginning it looked very serious, but did not look so serious at the time of the trial; that the limb is a little larger than the other by reason of the swelling produced by the disease itself; that the natural course of the disease was to cause a little shortening of the limb; that he could not say as to the probabilities of his having full movement of the hip joint, but he thought the plaintiff would have fairly good motion of the joint; that

the results of the treatment had been good; that the limb would not be shortened more than an inch; that the interference of motion would not be so much but that he could get around all right. The most favorable view of the evidence fails to show with certainty any serious permanent injury, but upon the whole evidence we are unable to say that the damages assessed by the jury are excessive.

*By the Court.*—The judgment of the circuit court is affirmed.