FIREMEN'S FUND INSURANCE COMPANY, Respondent, vs.
SCHREIBER, Appellant.

*December 9, 1911—June 4, 1912.*

*Bailments: Negligence: Liability: Wrongful act of bailee's servant:
Scope of employment: Automobiles: Joy ride by servant in
charge of garage.*

1. In case of a bailment for hire, in general, the bailee is liable only for the exercise of ordinary care,—he is in no sense an insurer.
2. The measure of care called for by the foregoing rule is such as men, in general, of common prudence ordinarily bestow upon their own property similarly situated.
3. A contract of bailment, in the absence of special situations to the contrary, involves, by necessary inference, an understanding that the bailee may use the usual means of executing the agreement.
4. The rule, last stated, includes the privilege of employing assistants and delegating the work, in whole or in part, to them,

being responsible for their conduct while acting within the scope of their employment and performing the duty of the principal.

5. The principal, in the circumstances of the last foregoing, is not an insurer as to the conduct of his employee. He is responsible for ordinary care in the selection of his agents, ordinary care as regards retaining them in his employ, and responsible, *respondeat superior*, for all negligences and wrongful acts of the agent within the scope of the employment in the execution of the contract of bailment.

6. The rule may be stated, as commonly, thus: The master is liable for all acts of his servant while engaged in his master's business within the scope of such servant's authority in furtherance of such business; but, if he steps aside therefrom and proceeds to serve some purpose of his own, the master is not liable.

7. Departure of the agent from the scope of his employment to effect a personal purpose, severs the connection between him, his principal, and the latter's employer, rendering him, alone, liable for his wrongful conduct to such employer's damage.

8. If the agent, acting within the scope of his employment, performs the principal's duty in an unauthorized way to the damage of the latter's employer, such principal is liable therefor; but, if a wrong be done by the agent outside the scope of his employment to the damage of such employer, though perpetrated within the period of such employment and through capacity acquired by reason of the employment, such principal is not liable.

9. The doctrine respecting the liability of a railroad company for the conduct of its employees in the course of their employment, whether within the scope thereof or not, as in *Craker v. C. & N. W. R. Co.* 36 Wis. 657, does not rest on the principle of *respondeat superior;* it is a special liability grounded on absolute duty, and liability for the safety of passengers as regards negligent acts of such employees in the course of their employment, and does not apply to situations in general,—they are governed by the ordinary rule of *respondeat superior.*

10. To render the wrong of the agent that of the principal,—*respondeat superior*,—the fact that it was done in the course or period of employment, is not sufficient; it must be in the prosecution of the principal's business, not by stepping aside therefrom to serve a personal end.

11. The element of stepping aside, mentioned in the last foregoing, which is essential to break the *nexus* between the principal, the agent, and the employer of such principal, needs only change of mental attitude from that of serving the principal to that of serving a personal end; no particular interval of time is necessary.

[Syllabus by MARSHALL, J.]

KERWIN, SIEBECKER, and TIMLIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

Action to recover of a bailee for the wrongful act of his servant while in the line of duty.

Plaintiff insured one Schleisinger against damage to his automobile, while in use. The machine was kept in defendant's garage, he receiving $20 per month for housing and care. He had in his employ one Flynn whose duty it was to be at the garage at 6 o'clock p. m.,—the time for the day attendants to quit work,—and stay through the evening and into the night so long as necessary to do the work of washing automobiles and polishing the brass and nickel work and letting patrons in or out with their machines. His quitting time was from midnight to 4 or 5 o'clock in the morning, according to circumstances. While on duty he was the only attendant. Customarily he kept the door locked, but opened it from time to time to accommodate customers. Upon leaving the garage without any attendant it was his business to lock the door. On the occasion in question, about 1:30 a. m., having completed his work of washing and polishing, he left the garage to go to a near-by lunch counter. He had lost his key, so attached a wire to one of the upper door bolts, leaving the end outside, with which he could by pulling slide the bolt up and down and release the door. Upon going out he left his coat intending to return and permanently close the place for the night. While at lunch he fell in with an acquaintance and they conceived the idea of taking the machine in question and having a ride. No one had a right to take out the machine without

the owner's permission which was not given. The two executed their plan and while using the machine within the risks insured against under the policy, injured it. Plaintiff was compelled to pay the loss. Thereupon it commenced this action upon the theory that defendant's servant wrongfully appropriated the machine, rendering both liable for damages. The facts stated were undisputed and within the issues made by the pleadings. At the close of the evidence a verdict was directed in plaintiff's favor.

For the appellant there was a brief by *Lyman G. Wheeler,* attorney, and *R. S. Witte,* of counsel, and oral argument by *Mr. Wheeler.*

For the respondent there was a brief by *Richberg & Richberg* and *Erich C. Stern,* attorneys, and *R. D. Stevenson,* of counsel, and oral argument by *Mr. Stevenson.*

The following opinions were filed April 3, 1912:

MARSHALL, J. At first impulse one might say that, in the circumstances of this case, the plaintiff ought to recover. A hasty decision might so lead. That is evident from the summary manner of the disposition below. However, upon reflection it would occur, as it seems, that the case is to be ruled by settled principles, not by mere impulsive thought as to what is right and what is wrong. Further thought and it would occur that the law as to such a situation must have been settled along reasonable and practicable lines, consistent with the necessary relations of members of a community to each other.

There must be masters and servants. One cannot do everything directly. He must needs employ assistants. That is expected by every one to whom he owes a duty, contractual or otherwise, as regards safety of persons or property. How far does that duty extend? Does it extend so far as to make every act of the servant while in the employ of the master, whether done by actual or implied direction or assent of the master,— for the servant's personal negligences and torts attributable to

his own purpose, as well as those occurring by excessiveness in doing what he is employed to do, imputable to the master? If so, then the master must to all intents and purposes, be an insurer against conduct of his servant and under a very great risk from which he has no practicable way of escape by any degree of care he can personally exercise. The only way of escape would be to restrict his activities to his personal capacity. The learned trial court evidently went to the fullest extent of liability we have indicated.

The case presents these aspects: (1) What was the real scope of Flynn's employment? (2) Did it effectually terminate when he left the garage for his lunch so that when he returned with his friend, he did so rather as a stranger than an employee, though having opportunity by reason of his service to enter the garage? (3) Was he actually in the service of the defendant in charge of the garage at the time he took out the machine? That he had no authority from the master to take it out; that his act was not, even remotely, connected with anything he was authorized to do; that it was something neither authorized nor within reasonable anticipation from the standpoint of the master; and that it was something any other lawless person might as well have done had he only possessed the easy means of entering the garage,—are not in dispute.

As we proceed with the case, it will be observed that whichever of the suggested situations may be the real one as to the facts, the legal result is substantially the same. It may be that the learned court below did not think otherwise; but whether a right result was reached is another thing. It may have been thought that the fact of Flynn having rightful access to the garage, regardless of any actual wrongful conduct on the part of appellant either in employing or retaining him, was sufficient. If not so thought, then the case went upon the idea of absolute responsibility for the conduct of Flynn while he was in charge of the garage. The vital contest below on the facts, as counsel viewed the matter, seems to have

been as to whether Flynn was in charge of the garage when he took out the machine, or had practically left for the night and returned as a stranger, merely having means of making an entry without being a trespasser. The situation is presented in much the same way here. The real vital point in the matter, as we shall see, did not receive much, if any, attention.

From the foregoing, familiar and elementary as the law is in general, applicable to the responsibility of a master for the acts of his servants, either as regards the subject of a bailment for hire, as in this case, or otherwise, it seems best to refer thereto at some length. A branch of the law, however familiar, as it may seem to some, which has led to such divergence of thought between counsel and court, as here, may well be treated with some particularity.

In the first place, the liability of appellant, whatever be the choice of aspects as to the facts, as before indicated, rests on breach of mere contract or other duty to respondent. Therefore the inquiry must first be, What are those duties?

The duties referred to are the same in case of a bailment, as here, as in that of any other bailment for hire, except in such special relations as characterize the business of innkeepers, common carriers, and possibly some other vocations, which, in the whole, form a class quite apart from the ordinary. Berry, Law of Automobiles, § 207; Babbitt, Law of Motor Vehicles, § 639. A bailee for hire owes to the bailor the duty to exercise ordinary care as regards the subject of the bailment. That is all. Edwards, Bailments (3d ed.) § 4; 3 Am. & Eng. Ency. of Law (2d ed.) 747; Jones, Bailments, 86. Such is the rule it is said "by the harmonious consent of nations."

All agree that the ordinary bailee is in no sense an insurer. Story, Bailments (9th ed.) §§ 25–32; Schouler, Bailments, 25; Berry and Babbitt, *supra*.

The text on the subject under discussion is without substan-

tial variation in the many standard works at hand. It is quite as old, at least, as English law. It is supported by numerous adjudications, including our own. *Dimmick v. M. & St. P. R. Co.* 18 Wis. 471; *Savage v. Davis,* 18 Wis. 608; *Stacy v. Knickerbocker Ice Co.* 84 Wis. 614, 54 N. W. 1091. A bailee for hire, said the court in *Dimmick v. M. & St. P. R. Co.,* "should exercise that care which men of common prudence generally bestow upon their own property similarly situated, and is only liable in case of failure to perform this duty." That rule is found stated as often as any in the law, emphasis being frequently put upon the fact that a bailee is not an insurer.

Thus it is of the utmost importance here to keep in mind, absence from a contract of bailment of any element of insurance, presence of the element of responsibility for ordinary care, and presence of the element of consent, in the absence of any special agreement to the contrary, to use the usual means of executing the contract of bailment, particularly to do it by the employment of others and without occupying the status of an assurer for their conduct. Ordinary care as to them is the same as in the selection and retention of servants to perform any other service. There is absolutely no difference in principle or authority, so far as regards wrongful acts of the servants being attributable directly to fault of the master. Ordinary care in the selection and retention of employees, ordinary care on the part of employees in doing the things they are employed to do, ordinary care at all points, no more and no less, is the standard contracted for in the ordinary bailment for compensation as in this case. No exceptions are found in the law. It is stated in the books, old and new, that the bailee can only be held responsible for such care. That includes, imputable fault,—wrongful acts within the scope of the employee's employment. This last element is of controlling significance here as we shall see.

Though it will be found stated in the books that the bailee can only be held responsible for the use of ordinary care and common prudence in the preservation of property bailed, cases may be found supporting the view that when the bailee intrusts his duties to an employee, thus affording the latter opportunity to misuse the subject of the bailment, the act of the servant in so doing is imputable to the master, as was thought below in this case. Research, however, will readily disclose that such adjudications are few, incidental, inconsiderate, and have been overruled whenever directly and vigorously challenged. Several illustrations of this are found in the English reports to which American courts have commonly resorted for guidance on this subject.

. For example of the foregoing: In *Sleath v. Wilson,* 9 Car. & P. 607, ERSKINE, J., said:

"But whenever the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it. . . . The master, in such a case, will be liable, and the ground is, that he has put it in the servant's power to mismanage the carriage by intrusting him with it."

That is the logic upon which the judgment here rests, in one aspect of the matter.

In *Storey v. Ashton,* L. R. 4 Q. B. 476, the quoted language was condemned as out of harmony with settled law. The contrary doctrine applied in *Mitchell v. Crassweller,* 13 C. B. 237, was approved, the court saying:

"The true rule is that the master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment."

The doctrine above stated is found universally adopted in England and this country. It is stated by text-writers as not admitting of any exceptions as regards ordinary bailments.

This excerpt from Edwards on Bailments (3d ed.) § 389, is a good illustrative example and will be found quoted and approved in many adjudications:

"The general rule is now well settled that the master is liable for all the acts of his servant which are within the general scope of his employment and which are done while engaged in his master's business and with a view to the furtherance of that business and the master's interests, whether such acts are done negligently, wantonly, or even wilfully.    But if the servant goes outside his employment, and, without regard to his service, acting with malice or in order to effect some purpose of his own, wantonly causes damage to another, the master is not liable. . . . The rule is perfectly plain and well settled; and the only difficulty in its application is generally one of fact, namely this, to ascertain the true relation in which the parties stood to each other."

That is, as explained, whether the act was done, not within the course or period, but within the scope of the employment.

For another example we quote from Mechem on Agency, § 737:

"If the agent or servant, therefore, steps outside of his employment to do some act for himself, not connected with his principal's business, the latter will not be liable for the agent's negligence while so engaged.    Beyond the scope of his employment the agent or servant is as much a stranger to his principal as though he were a third person."

And again from Story on Bailments (9th ed.) § 402, as to the precise relations under consideration:

"The master is not universally liable for the misdeeds of his servants; and, therefore, we are to distinguish whether the act complained of has been done in the service of the master, or in obedience to his orders, or not . . . ,"—done in the service of the master, as the author shows,—for the purpose of serving the master.    "The master is not responsible for any wilful or malicious injury done by his servant" unless done "in the master's service in the course of his employment."

That is, as explained by illustrations, in doing the thing he was employed to do.

The doctrine thus stated, it will be observed, applies particularly to the general contract of bailment where the employer uses servants in the execution of the agreement. It is general in all situations where the relation of master and servant exists. It has been repeatedly sanctioned and applied in this court,—in the whole covering a variety of situations. *Winkler v. Fisher*, 95 Wis. 355, 70 N. W. 477; *Bergman v. Hendrickson*, 106 Wis. 434, 82 N. W. 304; *Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 110 N. W. 424; *Cobb v. Simon*, 119 Wis. 597, 97 N. W. 276; *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113 N. W. 658; *Topolewski v. Plankinton P. Co.* 143 Wis. 52, 126 N. W. 554.

Many authorities bearing on the subject are found elsewhere, and among them instances involving substantially similar situations as the one before us,—so far identical as to leave no room for distinguishment on principle. Among them are the following: *White v. Comm. Nat. Bank*, 4 Brewst. 234; *Sanderson v. Collins*, 90 L. T. Rep. 243; *Ellis v. Turner*, 8 Term Rep. 531; *Coleman v. Riches*, 16 'C. B. 104; *Rayner v. Mitchell*, L. R. 2 C. P. Div. 357; *Mechanics' Bank v. Bank of Columbia*, 5 Wheat. 326; *Foster v. Essex Bank*, 17 Mass. 479; *Adams v. Cost*, 62 Md. 264; *Maddox v. Brown*, 71 Me. 432; *Merchants Nat. Bank v. Guilmartin*, 88 Ga. 797, 15 S. E. 831; *Cavanagh v. Dinsmore*, 12 Hun, 465; *Stone v. Hills*, 45 Conn. 44; *Evans v. Dyke A. Co.* 121 Mo. App. 266, 101 S. W. 1132.

Those cases, and many others representing all jurisdictions which might be cited, show that the test as to whether a servant in doing a wrongful act was in the employ of the master, and as such in charge of a bank, or a warehouse or repair shop, garage, or handling his master's team, or performing other service in which the master, in case of the act being his own,

would be responsible for misconduct to another injured in his person or property by the act of the servant, is whether the particular act was within the scope of the employment. It matters not whether the master authorized the particular wrongful acts, if the unauthorized matter was merely a wrong way of doing the thing the servant was employed to do,—that is, was in pursuit of the employment itself,—within the scope of it, the master is liable; but if it was something entirely outside of such scope, though done within the period of employment and while actually employed, and capacity to do it was obtained through the service, the master is not liable.

A leading case is *Foster v. Essex Bank, supra.* There the whole subject is discussed at length, many English authorities being cited and reviewed. The general effect is that if the servant of a banking corporation in charge of the bank,—one employed and retained with due care, negligently or fraudulently causes a customer to lose a special deposit left in care of the bank, the corporation is not liable. *Finucane v. Small,* 1 Esp. 315, was cited and approved. There a person stored his trunk and contents with another for hire. The latter's servant stole the contents. Held that the master was not liable. Summing up the result of the authorities the court said, in the *Foster Case:*

"To make the master liable for any act of fraud or negligence done by his servant, the act must be done in the course of his employment; and if he step outside of it to do a wrong, either fraudulently or feloniously, towards another, the master is no more answerable than any stranger. The cases of innkeepers, common carriers, and perhaps shipmasters or seamen, when goods are in bailment, are exceptions on grounds of public policy."

*Merchants Nat. Bank v. Guilmartin, supra,* is another case involving the question of whether a bank is liable for the theft of a special deposit by its cashier in charge. True, this case, as the former and each of several others cited therein of similar import, involved a bailment without compensation, where

the degree of care contracted for was only such as a bailee uses in his own business. But they are directly to the point that, in such extreme cases as the theft of a deposit, the question of the bailee's liability turned wholly on whether he exercised the proper degree of care or not,—such degree, as to whether ordinary or something less, being determinable on whether the bailment was for compensation or not. The idea of absolute responsibility for the act of the servant, as if done by the master, or liability at all, except based on some fault as regards trusting the bailment to the control of the servant; imputable fault,—a wrong committed by the servant by actual or constructive assent of the master, was repudiated. The mere custodianship as distinguished from bailment for compensation, was not recognized as varying the rule that a master is not liable, absolutely, for the act of his servant. In any event, the court held, for liability, the wrongful act must be attributable to some negligence of the master, or some negligence or some other fault of the servant in doing the act the master employed him to do. We quote:

"A master is not liable for the servant's fraud or wilful tort unless he is acting in the conduct of his business, that is at his actual or implied instance. The servant must, in the wrongful act, be acting or intending to act in behalf of the master and in the course of his employment."

*Evans v. Dyke A. Co., supra,* is interesting on the subject under discussion. Plaintiff, owner of an automobile, by arrangement with B., the defendant, proprietor of a garage, sent C., his brother, with the machine to the garage for sale. He found plaintiff's servant, E., in charge. E., in the absence of the proprietor, had authority to receive machines and look after the business. He directed C. to run the machine into the garage. After some conversation respecting the sale price, E. said the machine could readily be sold; that the garage would not be open the next day, Sunday, but as they lived in the same neighborhood, if he, C., would take the ma-

chine back he, E., would call for it the next morning and show it to a proposed customer. That was agreed to. E. called accordingly. The machine was delivered to him and received, ostensibly, for the employer, B. Pursuant to his agency employment, E. showed the machine to a prospective purchaser, and then, instead of returning it to A. or taking it to the gar- age, went on a pleasure trip during which it was wrecked. The case was treated in various aspects, one upon the theory that E. actually received the machine as agent for B., and while having it as such, with the duty to return it to A. or take it to the garage, after displaying it to the prospective purchaser, turned aside and went on the pleasure ride. In that aspect, the court thus discoursed in general effect: A master is responsible for the negligent and wilful tort of his servant only when committed in the sphere of the servant's duty and while acting in the master's behalf. On principle and authority the automobile company is not liable for the negligence of its agent while he was using the machine for a purpose wholly detached from his employment. The agent's trip had no relation to his service as an employee of the company, and the latter's immunity from liability is settled by many decisions given on similar facts.

One more illustrative case, out of the many at hand, will certainly suffice to emphasize the text quoted from Edwards on Bailments, and the declaration here, that the master's liability for acts of his servants, is governed by precisely the same principle as was declared in *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276, and other cases decided by this court.

In *Sanderson v. Collins,* 90 L. T. Rep. 243, the facts were much like those in *Evans v. Dyke A. Co., supra.* A vehicle, called a dog cart, was intrusted to defendant for his temporary use for a consideration. When not in service it was kept in his coach house under lock and key and the key was usually in the hall of his dwelling house. He took the cart out for a drive. Upon the return it was the servant's duty to put it in

the coach house in the secure manner indicated.   Either he failed to do so, or after performing his duty removed the cart to the outside without the master's knowledge or consent, and then, wrongfully and tortiously, went for a pleasure ride and damaged the vehicle.   The master was held liable for the act of the servant in the trial court, though it was decided that the servant's act was not within the scope of his authority.   The recovery was placed on about the ground upon which the judgment here complained of, seemingly, was rendered.   On appeal, the decision was condemned because of there being no liability for the act of a servant while entirely aside from his authority, as distinguished from a wrong committed in doing the very act he is authorized to do.   Said the writer of the leading of three harmonious opinions:

"It seems to me that the first thing is to clear one's mind as to the facts of the relations existing beween the defendant and his servant.   The obligation of the defendant as bailee was only to take reasonable care of the thing bailed, and he is bound in that respect for an act of his servant done in the course of his employment.   But his obligation does not extend to cover the acts of his servant beyond the scope of his authority.   If the thing had been taken by a burglar or a stranger without negligence on the part of defendant, he would not be liable.   Here the taking was not by a burglar or a stranger, but it was the act of a person as much outside any authority conferred on him as if it had been done by a stranger.   The defendant had employed a competent servant and given him proper directions.   The defendant was not guilty of any negligence.   Therefore there was no want of care on the part of the defendant.   I think he is not liable."

ROMER, L. J., added, substantially: There was no obligation of insurable safety of the dog cart.   Defendant was not, himself, guilty of any negligence.   The servant was not acting in the line of his employment by defendant in taking out the dog cart.   That being so, the latter is not liable.

It will be observed that, in each of the cases involving the subject under discussion, decided by this court, save one which

we will refer to, specially, later, liability of the master turned on whether the act of the servant was a mere wrongful performance of what he was employed to do, and so within the scope of his authority, within the cited illustrations, or whether it was wholly for a purpose of his own, though done during the period of employment and of his being on duty.

In *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276, the question was whether the floorwalker in defendant's store did the act within the scope of his employment to discover and prevent shoplifting, or did it to extort money from the customer. For failure to observe the suggested test of liability and error in supposing that the rule in such cases as *Craker v. C. & N. W. R. Co.* 36 Wis. 657, applied, the judgment below was reversed.

In *Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 110 N. W. 424, the question was whether the servant merely went too far in executing his commission to discover persons guilty of abusing or stealing from cars, or, in personal revenge, arrested, unlawfully, and abused plaintiff. The instructions were criticised, but, as a whole, found without harmful error because the jury were emphatically informed that defendant was not liable unless the servant's wrongful act was committed in doing, in general, the very thing he was employed to do.

In *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304, the question was whether the bartender assaulted plaintiff for revenge, or to coerce him into paying a bar bill owing to the master. The court said that only in case of the latter was the master liable; that liability depended upon the principle of *respondeat superior;* and that *Craker v. C. & N. W. R. Co.* 36 Wis. 657, and *Fick v. C. & N. W. R. Co.* 68 Wis. 469, 32 N. W. 527, ruled by the special duty of a carrier of passengers to protect them, had no application.

In *Winkler v. Fisher,* 95 Wis. 355, 70 N. W. 477, the question was whether the son, who was out with a gun by his father's permission, was on a hunting expedition for personal pleasure, or in the employ of his father to protect the farm

from crows.  If he had left the farm and so gone beyond the scope of his authority, and perpetrated the negligent act in doing a thing he was not, upon any theory, employed to do, then it was said, the father was not liable.

In *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113 N. W. 658, the question was whether the defendant's servant assaulted the boy in performance of his duty to protect its cars. The servant had such protection within the scope of his employment at the time of the assault.  The test of liability of the master applied below and approved here was whether the assault was committed for the purpose of protecting the property.  Other cases might be referred to of the same tenor.

*Craker v. C. & N. W. R. Co.* 36 Wis. 657, is cited and quoted from by counsel for respondent here at considerable length.  If the rule thereof, to the limit, were applicable to such cases as this, counsel's confidence in the judgment would be well grounded.  Doubtless the learned trial court was guided by the strict rule.  For the particular class of situations to which the case belongs, the doctrine that the wrongful act must be strictly within the scope of the servant's authority to render the master liable, was repudiated, it being held that commission in the course of the employment is sufficient. That is, it was held that a railway company is practically an insurer of the personal security of passengers on its trains against wrongful acts of its employees.  That such doctrine was rather novel, even as to the particular situations, must be confessed.  As indicated in *Bergman v. Hendrickson, supra,* it did not go upon the doctrine of *respondeat superior*.  It has not been extended beyond the particular field, nor was there any significant attempt to do so till *Cobb v. Simon, supra,* where it was followed in the court below as regards the duty of a store proprietor to his patrons.  The judgment was reversed, this court saying:

The rule applied below would be proper in case of an assault by a railroad train brakeman upon a passenger as in *Craker v. C. & N. W. R. Co.*  "It has not, however, been applied to a

merchant in his relations to customers" to whom he owes only the duty of ordinary care for their safety.   Therefore it was error to instruct the jury generally that "a master is liable for a wrong done by his servant, whether through negligence or malice of the latter, in the course of an employment in which the servant is engaged to perform a duty which the master owes to the person injured,"—wrong because the language was susceptible of the meaning that the test of liability was whether the wrongful act was done within the mere course or period of the servant's authority.   Whereas the true rule is whether it was done within the scope of the servant's authority, a wrong in doing the very act the servant is employed to do,—not one done by stepping aside from the scope thereof, "for the accomplishment of his own purposes,"—"not whether done during the existence of the employment but whether done in the prosecution of the master's business."

How very unlike this is the drastic rule of the *Craker Case,* appropriate though that may be in its proper field! While in some text-books the emphatic language of RYAN, C. J., in such case is referred to with more or less approval, the rule, in general, universally maintained is, as before indicated.

Thus in Mechem on Agency, § 741, after reviewing the *Craker Case,* it was said:

"It does not, by any means, follow from this rule that the principal is liable for *any* wilful and malicious act of his agent, but only for those which are committed by the agent while acting in the course of his employment and within the scope of his authority.   At the same time it is not to be inferred that the principal's liability depends upon whether he has or has not intentionally authorized the doing of the wrongful act. . . . But what is meant, is, that if the agent, while engaged in doing something he is authorized to do, and while acting in the execution of his authority," commits the wrong, the master is liable.   But if "the agent steps aside from his employment to do some act having no connection with the principal's business, and to which he is inspired by pure personal and private malice or ill will, the master is not liable."

It should be noted that the author, while adding to the term "course of his employment" the term "and within the scope of

his authority," did not appreciate that without such addition the former term had been used to characterize a liability, regardless of the ordinary conception of the doctrine of *respondeat superior,*—one applicable to a special class of cases, and that the two terms joined as one, or the latter used by itself, accurately expresses the general rule dependable on such doctrine, as this court has, at least twice before, pointed out.

In connection with the foregoing it must be appreciated that the element of stepping aside, commonly found in the rule, does not require any particular period of cessation from the business or going away from the place thereof. A mental attitude of stepping aside, even momentarily,—turning the attention to the accomplishment of a purpose solely outside of that of promoting the object of the employment, effectually breaks the connection between the servant and the master,—leaves no "nexus" between them, as said in the authorities, vital to the latter's liability.

Perhaps far too much labor has already been spent upon this case but we hesitate to lay it down, notwithstanding the principles governing it seem few, plain, and to have been many times declared and applied here, since the particular situation is one that in modern life with its temptations, inviting opportunities to transgress, is liable frequently to arise. The peculiarity of conditions *in præsenti,* gives no warrant for the court to change the ordinary rules established, in effect, as the written law, governing the relation between bailee and bailor, or either, to third persons. A bailment is a bailment whether the subject be a package delivered to a bank for safe keeping, or a horse delivered to a livery-stable keeper for care, a vehicle delivered to a repairer for his trade, or an automobile delivered to a garage keeper to be stabled. An old principle is merely to be extended to new situations. That is all. It has ample unapplied capacity of expansion to satisfy all exigencies of the general class which called it into existence. It

cannot be properly expanded to the extent of sacrificing its essential foundation element, notwithstanding the new and significant opportunities for mischief. The owner of an automobile can easily protect himself, in greater degree, by special contract if he sees fit, or the legislature can make a new rule to fit the new phase of things.

We have thought to treat the case upon principle, more than authority, without searching widely for cases of the particular kind. It were better to adhere, consistently, to a code of principles than to strive to build up or promote one of mere case law. If we were to go into the latter field there would be no dearth of precedents, at least, quite like *Sanderson v. Collins* (90 L. T. Rep. 243) and *Evans v. Dyke A. Co.* (121 Mo. App. 266, 101 S. W. 1132), already cited.

That the liability of a garage keeper for the safety of an automobile intrusted to him, is the same as the keeper of an ordinary stable for a horse or carriage likewise intrusted, and that he is, in no sense, an insurer, is commonly declared as, on principle, must be the case. Babbitt, Law of Motor Vehicles, §§ 637–641; Berry, Law of Automobiles, § 207 and cases cited, particularly *Ford M. Co. v. Osburn,* 140 Ill. App. 633.

The mist surrounding this case readily lifts when it is examined in the light of the foregoing, and the real logic of the master's liability for acts of his servant is appreciated. There is a duty. It requires exercise of ordinary care. As that may be done directly or indirectly, so it may be breached directly or indirectly. As to the latter, there can be no imputable fault, and hence no liability, *respondeat superior,* outside the scope of the delegated duty. The torts and negligences of an employee in doing the very thing he is directed or employed to do, must be seen apart from those which are entirely separate therefrom. As to the latter, the relation of master and servant does not exist. Mere opportunity, as we have seen by the numerous authorities cited, afforded by the

relation of master and servant, makes no difference, so long as there is no negligence in conferring such opportunity. Nor is a situation where the servant is in charge, as in this instance, differentiated from where he stands in any other relation, in general, to third persons, creating competency to charge his master with his negligence or other wrong doing.

Care is required to appreciate the meaning of "scope of the employment." It is not, as said by the Minnesota court in *Slater v. Advance T. Co.* 97 Minn. 305, 107 N. W. 133, "synonymous with during the period of the employment." But, as indicated in *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113 N. W. 658, and *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276, it signifies "in the actual prosecution of the master's business." For example,—if it were the duty of a night man at a garage to deliver a customer's machine to him at his house upon call therefor, and in responding to such a call, he carelessly or wantonly injured the machine, the wrong would be one within the scope of his employment. The taking out of the machine contrary to the orders of both master and customer, and for a purely personal purpose, is another thing.

Now wherein was there any breach of duty of appellant shown here? The servant, so far as appellant had any reason to suppose, was a proper person to leave in charge of the garage. There was no claim made to the contrary nor any evidence in that regard. The servant did not take the machine out under any authority from the appellant, but in most flagrant violation of it. He would not have exceeded his authority any more certainly had he stolen the subject of the bailment, as in some of the cases cited, or destroyed it in the garage. He was not pretending to act for appellant in any respect, but acted solely for himself. As said, in effect, by PARKER, C. J., in *Foster v. Essex Bank,* 17 Mass. 479: He cannot be considered, in any view, as having acted within the scope of his employment when he committed the villainy and the defendant is no more answerable for such act than he

would be had the servant stolen plaintiff's pocketbook while he was in the garage to take out his machine. It being clear that he had no authority whatever to take out the machine, in the words of YELLOTT, J., in *Adams v. Cost,* 62 Md. 264, 271, "by no process of ratiocination could it be made demonstrable that he was acting under the authority of the defendants. On the contrary, we are irresistibly and logically led to the conclusion that he was then acting independently of that authority, and consequently not within the limits of his assigned employment as the defendants' servant." He wilfully, knowingly did the wrongful act for purposes entirely foreign to his employment. He was not hired to do any such act. How then can it be said that it was done within the scope of his employment?

The result of the foregoing renders it immaterial whether Flynn practically left his service for the day and then returned as a stranger and took out the machine. It seems to be conceded that, if such were the fact, the appellant is not responsible under the extreme rule of *Craker v. C. & N. W. R. Co.* 36 Wis. 657. The learned court perhaps considered that Flynn merely absented himself from the garage for a brief period to get a lunch, intending to return and permanently close the place for the night. The indications are pretty plain that he was through for the day when he went for his lunch; that he had no thought of returning for further service, but merely to obtain his coat; that while so away he met his friend and together they conceived the plan of re-entering the place, primarily, if not solely, for the purpose of committing the trespass. Quite likely the thought of getting the coat occurred because of the necessity or convenience of it in view of the contemplated expedition. That demonstrates how very foreign such trespass was from the scope of Flynn's employment. While it would make no difference with the result, as we view the case, we are inclined to hold that Flynn returned to the garage for the machine,—for an unlawful purpose,

formed after he had substantially quit service for the day, and so his act was outside the scope of his employment, even from respondent's viewpoint. The mere fact that he possessed the means of re-entering the garage, would not make the entry within the scope of his employment, if the purpose of such entry was to commit the trespass, or even to get the coat, especially if that was merely incidental to the scheme to commit the wrong.

Little time need be spent with the contention of appellant that the scope of Flynn's employment was confined to washing machines. He was the night man at the garage. That is plain. One of the duties of night men, evidently, is to wash machines. Necessarily, his duties required him to prevent unauthorized interference with machines, to open and close the place as necessary to accommodate customers in taking out or putting them up, and to assist if necessary. The difficulty was that he violated the very purpose of his employment instead of acting within the scope of it, in committing the trespass. It is hard to conceive a more plain case of stepping completely aside from the scope of one's employment, within the rule stated, than occurred in this case.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss the case with costs.

KERWIN, J. (*dissenting*). Although the opinion of the court has been extended to great length in the discussion of authorities, it appears to me that the principles involved are few and simple. This seems to be conceded in the opinion. The court says:

"Perhaps far too much labor has already been spent upon this case but we hesitate to lay it down, notwithstanding the principles governing it seem few, plain, and to have been many times declared and applied here. . . ."

The defendant was a bailee for hire, and of course the ordinary rules of law relative to bailees are applicable, hence no

extended citation of authorities would seem necessary. The defendant under the contract for hire was bound at least to use ordinary care to protect the automobile from use by parties other than the owner or persons authorized by the owner to use it. Flynn was the agent of the defendant, charged with the duty of guarding and protecting the subject of bailment, namely, the automobile. At first blush it would strike one as a remarkable doctrine of law which would justify a bailee, who had contracted for hire to care for and protect the property of his bailor, to seek escape from liability because his agent to whom he had intrusted such duty had destroyed the property while charged with the duty his master had delegated to him of protecting it. This seems to be the situation which the case before us presents. It is not denied but that the defendant under his contract with the owner of the automobile owed him the duty of having at the garage when open some one to take care of the car and prevent it from being taken out except at the request of the owner, and to guard it from use by unauthorized persons. At the time in question such duties were intrusted by defendant to Flynn. It is well established law that the defendant here cannot escape liability on the ground of failure of the agent, Flynn, to perform his duty, whether such failure was wilful or the result of negligence or malice. *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Stranahan Bros. C. Co. v. Coit,* 55 Ohio St. 398, 45 N. E. 634; Wharton, Agency & Agents, §§ 487, 543; *Bryant v. Rich,* 106 Mass. 180; *McCord v. Western Union T. Co.* 39 Minn. 181, 39 N. W. 315; *Pullman P. C. Co. v. Gavin,* 93 Tenn. 53, 23 S. W. 70; *Richberger v. Am. Exp. Co.* 73 Miss. 161, 18 South. 922; *Jones v. Glass,* 35 N. C. 305.

In the execution of his authority the agent represents his principal, and while so acting the acts of the agent are the acts of the principal, and whatever injuries result to third persons from the manner in which the acts of the agent are

performed are attributable to the principal if the agent be acting in the execution of his general authority to act, that is, in the scope of his employment; but the question as to what acts are within the scope of employment is not always easy of solution. It may, however, be laid down as a general rule that when a duty to a third person is intrusted to the agent by the principal, as between such third person and the principal the principal is liable for failure of the agent to perform. In *Jones v. Glass, supra,* Chief Justice RUFFIN, speaking for the court, said:

"If the defendant would have been thus liable for the act, had it been that of his own hand, he is, as bailee, equally liable for it as the act of one to whose control and management he committed the slaves."

The doctrine is well stated in Wood in his work on Master & Servant, sec. 321:

"In that class of cases where the master owes certain duties either to third persons or the public, whether the same arise from contract or statutory obligations, a different rule of liability exists from that which prevails when the liability sounds entirely in tort. When by contract, or by statute, the master is bound to do certain things, if he intrusts the performance of that duty to another, he becomes absolutely responsible for the *manner* in which the duty is performed, precisely the same as though he himself had performed it, and that without any reference to the question whether the servant was authorized to do the particular act. . . . Where the master, by contract or operation of law, is bound to do certain acts, he cannot excuse himself from liability upon the ground that he has committed that duty to another, and that he never authorized such person to do the particular act. Being bound to do the act, if he does it by another he is treated as having done it by himself, and the fact that his servant or agent acted contrary to his instructions, without his consent, *fraudulently* even, will not excuse him."

If I understand the opinion of the court correctly it is conceded that the defendant is liable if Flynn was acting within

the scope of his duty at the time he took the automobile from the garage.   The opinion reads:

"Little time need be spent with the contention of appellant that the scope of Flynn's employment was confined to washing machines.   He was the night man at the garage.   That is plain.   One of the duties of night men, evidently, is to wash machines.   Necessarily his duties required him to prevent unauthorized interference with machines, to open and close the place as necessary to accommodate customers in taking out or putting them up, and to assist if necessary.   The difficulty was that he violated the very purpose of his employment instead of acting within the scope of it, in committing the trespass.   It is hard to conceive a more plain case of stepping completely aside from the scope of one's employment, within the rule stated, than occurred in this case."

The opinion of the court seems to be grounded upon the proposition that the agent, Flynn, stepped aside from the scope of his duty in the circumstances causing the injury, and appears to ignore the proposition of law which makes the principal liable for the acts of the agent in violating the duty of the principal delegated to the agent to perform.   An examination of the authorities will show that there is considerable confusion in the books as to when the principal may escape liability for the acts of the agent outside of the scope of his duty, or, more accurately speaking, when the agent is outside the scope of his duty in the particular case.   The confusion results from determining upon the facts of each case when the agent is and when he is not acting outside of the scope of his duty.   In the case at bar, however, it would seem plain under the authorities heretofore cited, as well as numerous others which might be cited, that no serious question respecting the scope of Flynn's duty arises in this case, because the defendant, being a bailee for hire and bound under his contract to protect the machine, and having delegated that duty to Flynn, was liable for the breach of that duty by him.   As

said in *McCord v. Western Union T. Co.* 39 Minn. 181, 183, 184, 39 N. W. 315:

"Where the business with which the agent is intrusted involves a duty owed by the master to the public or third persons, if the agent, while so employed, by his own wrongful act occasions a violation of that duty, or an injury to the person interested in its faithful performance by or on behalf of the master, the master is liable for the breach of it, whether it be founded in contract or be a common-law duty growing out of the relations of the parties. 1 Shearm. & Redf. Neg. (4th ed.) §§ 149, 150, 154; Taylor, Corp. (2d ed.) § 145."

In the case at bar it would seem plain that since the agent, Flynn, was bound to protect the car, the master could not escape liability because the agent violated such duty. To step aside from duty means more than to commit a tort within it. No one would claim but that the bailee himself would be liable had he done the acts complained of here. And it is settled in this state and many others, and is not disputed in the majority opinion, as I understand it, that the agent, when charged by the bailee with the duty of protecting property, stands in the place of the bailee and his acts are chargeable to the bailee. *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Jones v. Glass,* 35 N. C. 305; Mechem, Agency, § 740; *Milwaukee & M. R. Co. v. Finney,* 10 Wis. 388; *McMahon v. Chicago City R. Co.* 239 Ill. 334, 88 N. E. 223; *Goddard v. G. T. R. Co.* 57 Me. 202; *Birmingham R. & E. Co. v. Baird,* 130 Ala. 334, 30 South. 456; *Dickson v. Waldron,* 135 Ind. 507, 34 N. E. 506, 35 N. E. 1; *Brooks v. Jennings Co. A. J. S. Asso.* 35 Ind. App. 221, 73 N. E. 951; *Bryant, v. Rich,* 106 Mass. 180; *Richberger v. Am. Exp. Co.* 73 Miss. 161, 18 South. 922; *Pullman P. C. Co. v. Gavin,* 93 Tenn. 53, 23 S. W. 70; *Williams v. Brooklyn D. T. Co.* 12 Misc. 565, 33 N. Y. Supp. 849; *McCord v. Western Union T. Co.* 39 Minn. 181, 39 N. W. 315; *Campbell v. Pullman P. C. Co.* 42 Fed. 484; *Barrow S. S. Co. v. Kane,* 88 Fed. 197; *Houston & T. C. R. Co.*

*v. Bush* (Tex.) 133 S. W. 245; note 4 L. R. A. N. s. 485;
*Stranahan Bros. C. Co. v. Coit,* 55 Ohio St. 398, 45 N. E.
634; *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304;
*Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 110 N.
W. 424; *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113
N. W. 658.

The scope of the agent's duty has reference to the proper
care, protection, and preservation of the property intrusted
to him, and when he violates that duty and damage results
therefrom to the property the master is liable.

In *Craker v. C. & N. W. R. Co.* 36 Wis. 657, the conductor
committed a tort in assaulting a passenger, and his act was
contrary to his duty under the contract of carriage, which was
to exercise a high degree of care in protecting passengers.
The court said:

"But we need not pursue the subject.    For, however that
may be in general, there can be no doubt of it in those employ-
ments in which the agent performs a duty of the principal to
third persons, as between such third persons and the principal.
Because the principal is responsible for the duty, and if he
delegate it to an agent, and the agent fail to perform it, it is
immaterial whether the failure be accidental or wilful, in the
negligence or in the malice of the agent; the contract of the
principal is equally broken in the negligent disregard, or in
the malicious violation, of the duty by the agent.    It would
be cheap and superficial morality to allow one owing a duty to
another to commit the performance of his duty to a third,
without responsibility for the malicious conduct of the substi-
tute in performance of the duty.    If one owe bread to another
and appoint an agent to furnish it, and the agent of malice
furnish a stone instead, the principal is responsible for the
stone and its consequences."

On the question of turning aside from duty there is no dif-
ference in principle between the *Craker Case* and the instant
case.    The fact that a higher degree of care is due from a
common carrier than from an ordinary bailee for hire does not
change the rule as to scope of duty.    In each case it is a tort

or disregard of duty committed in the line of duty. In the one case the agent's duty was to protect the passenger, in the other the property. In each case the agent was within the line of his duty, but, disregarding it, violated the express contract which he was bound to perform.

In my opinion the *Craker Case* governs the instant case, and the rule of that case is supported by the great weight of authority, as shown by the cases heretofore cited and many others. The doctrine of the *Craker Case* has been repeatedly referred to and approved by this court. *Bergman v. Hendrickson, supra; Johnston v. C., St. P., M. & O. R. Co., supra; Schultz v. La Crosse City R. Co., supra;* and many other cases in this court.

In *Dickson v. Waldron,* 135 Ind. 507, 34 N. E. 506, 35 N. E. 1, the duty of the agent was to preserve order and to remove offensive patrons or guests, and it was held that where the servant unjustly attacks and injures an offensive patron the master is liable.

In *Richberger v. Am. Exp. Co.* 73 Miss. 161, 18 South. 922, the rule is discussed respecting the change from the old doctrine that the master was never liable for the wilful or malicious act of his servant and the rule laid down that the true test of liability now rests upon whether or not the injurious act was done in the course of the master's business.

*Stranahan Bros. C. Co. v. Coit,* 55 Ohio St. 398, 45 N. E. 634, holds that where the master owes to a third person the performance of some duty and commits the performance of such duty to a servant, the master cannot escape responsibility if the servant fails to perform it, whether such failure be accidental, wilful, or the result of negligence or malice.

*Pullman P. C. Co. v. Gavin,* 93 Tenn. 53, 23 S. W. 70, holds that, while a sleeping-car company is not a common carrier or innkeeper, it is liable for the theft of money of a passenger on the sleeping car by the porter in charge of the car.

*McMahon v. Chicago City R. Co.* 239 Ill. 334, 88 N. E.

223, holds that while the appellant was a common carrier of passengers it was not an insurer, but was bound to protect passengers from violence, and that if the passenger was assaulted or insulted through the negligence or wilful misconduct of the carrier's servant the carrier is responsible. To the same effect is *Goddard v. G. T. R. Co.* 57 Me. 202.

In *Williams v. Brooklyn D. T. Co.* 12 Misc. 565, 33 N. Y. Supp. 49, the defendant agreed to guard the plaintiff's residence from burglars and thieves during a certain period, and it is held that the defendant could not escape liability for the act of the guard employed in breaking into the house and stealing therefrom, because, the defendant having contracted to perform the duty, when it committed it to another it did so at its peril; that the act of the agent is to be treated as defendant's own act, and it is liable for whatever the agent does, even though done contrary to instructions, wilfully, or fraudulently.

I have no quarrel with the cases cited from this court in the opinion. None of them are out of harmony with the *Craker Case* and some of them strongly support and approve it.

I shall briefly review the principal cases relied upon in the opinion of the court from other jurisdictions.

In *White v. Comm. Nat. Bank,* 4 Brewst. 234, the box of valuables was deposited with the bank as a gratuitous bailment, and it was held that the bank, having used due diligence in keeping the goods, was not liable, although they were stolen. Besides, it appears in the case that the bank received the deposit at the risk of the depositor. Moreover, the case went off on the proposition as to whether the box was lost by any of the officers of the bank while in the discharge of their duties and the degree of care which the law imposes under such circumstances, the court holding that under the circumstances the bailee was liable only for gross negligence.

*Foster v. Essex Bank,* 17 Mass. 479, is also a case of gratuitous bailment, and it was held that the bank was not liable for stolen goods where due care has been used. The deposit

in this case was kept under the supervision of the depositor, he having the key. It was contended that the deposit was made under contract to keep safely, but it was held that no authority existed to make such contract.

*Ellis v. Turner,* 8 Term Rep. 531, simply states the general rule to the effect that the master is liable for the acts of the servant in things with respect to his duty, though the master is not answerable for the agent's misconduct in things that do not respect his duty to the master.

*Coleman v. Riches,* 16 C. B. 104, is very remote in its application. The case is one where wilful fraud had been committed in giving a receipt for grain delivered which had not been delivered.

*Adams v. Cost,* 62 Md. 264, is a case where a person placed his mare at livery and instructed the servant of the proprietor to take her out for exercise, which was no part of the contract of livery, and while the servant had her out for such purpose she died. Held, and very properly of course, that the proprietor of the stable was not liable though the mare died in consequence of the immoderate riding and carelessness of the servant.

*Maddox v. Brown,* 71 Me. 432, is a case where a son, in the absence of his father and without his knowledge, took his father's horse and carriage, left the horse unfastened, and it being frightened ran away, and the carriage collided with the plaintiff's and injured it. Held, that the father was not liable.

*Merchants Nat. Bank v. Guilmartin,* 88 Ga. 797, 15 S. E. 831, is a case of gratuitous bailment. The deposit was received at the bank through its cashier and the cashier stole the deposit. Held, that the bank, having used that degree of diligence which the law required under the bailment, was not liable. In this case the court said (page 801):

"The custody of the deposit implies no act to be done, but only a mere continuance of possession until a return of the

property is demanded.   The cashier had nothing to do about it except suffer it to remain in a safe place of deposit.   Consequently in taking it to himself he is said to 'step aside' from his employment to do an act for his personal gain, regardless of the business for which he was engaged."

*Cavanagh v. Dinsmore,* 12 Hun, 465, is a case in which the plaintiff's intestate was run over and killed by defendant's truck through the negligence of the driver while pursuing an unauthorized course, and it was held that the driver was not acting in the business of his master at the time of the accident, hence defendant was not liable.

*Stone v. Hills,* 45 Conn. 44, is also a case where the driver of a team was acting outside of the scope of his duty when the injury occurred, and was held not to be in the employment of the defendant.

*Mechanics' Bank v. Bank of Columbia,* 5 Wheat. 326, involves the question of liability upon a check signed by the cashier of an incorporated bank.

The two cases mainly relied upon to support the majority opinion are *Evans v. Dyke A. Co.* 121 Mo. App. 266, 101 S. W. 1132, and *Sanderson v. Collins,* 90 L. T. Rep. 243.   In *Evans v. Dyke A. Co.* it appears doubtful from the record whether there ever was a delivery to the company, but, even if so, there was no special duty, upon the facts of the case, due from the company to the plaintiff, by special contract or otherwise, to care for or protect the machine.   The machine was simply intrusted by Evans to Lemon, agent of the company. It appears from the opinion and the facts stated that the agent used the machine in a capacity wholly detached from his employment.

In *Sanderson v. Collins* it does not appear that the coachman was charged with any duty of caring for or protecting the machine during the night.   It appears that when the coach was put in for the night the coach house was locked and the key left with the master or kept in the hall of his house.   It

is true that this case approaches more closely the instant case than any other cited in the opinion, but I think it may be distinguished from the case at bar, and, if it cannot be, my opinion is it ought not to be followed.

I think the judgment of the court below should be affirmed.

I am authorized to say that Mr. Justice SIEBECKER and Mr. Justice TIMLIN concur in this dissent.

A motion for a rehearing was denied June 4, 1912.