## ALONZO HILTON v. ROBY WAGNER.

Eastern Section. July 14, 1928.

Petition for Certiorari denied by Supreme Court, May 25, 1929.

Cox & Taylor, of Johnson City, for Hilton.
Sells, Simmonds & Bowman, of Johnson City, for Wagner.

PORTRUM, J.  Alonzo Hilton hired one of his automobiles (a Buick model), to Roby Wagner for the purpose of transporting Milligan College basket ball players from Johnson City, Tennessee, to Fort Benning, Georgia, near Columbus, Georgia, where they were scheduled to play a game of basket ball.  The team required two automobiles.  Roby Wagner was under a contract with the college authorities to transport the boys from place to place as they were scheduled to play.  He was going to drive one of his automobiles, and a boy by the name of Charles Onks was to drive Hilton's automobile.  One of the issues in the lawsuit is, Whose driver was Onks, Hilton's or Wagner's?

Wagner had contracted with Hilton for his car at a price of $11.50 per day.  Inquiry was made about the condition of the tires when Hilton represented them to be in pretty good shape, but as a matter of fact they were second hand tires which Hilton had placed on the automobile a short while before when he purchased it, removing the tires which were rotten.  Wagner did not know they were second hand tires.  He examined them and they appeared to be in fair condition.

Wagner started with two cars loaded with the team and when he arrived near Morristown one of the tires on the Hilton automobile blew out, making it necessary for Wagner to purchase a new tire, and this delayed the men in reaching Jefferson City on time, where the first stop was to be made.  They stopped in Morristown after the blow out and had a tire repaired.  When they reached Jefferson City, which was thirteen miles from Morristown, they noticed another tire was just ready to blow out.  This occurred on Saturday night and the next morning the parties started for Atlanta.  Before reaching Knoxville another tire blew out, which made it necessary to buy another new tire in Knoxville.  The two cars continued on their journey, Wagner being in front, and before Hilton's car reached Athens, one of the bearings on the car burned out.  One of the party was able to reach Wagner at Cleveland by telephone and he drove

back to Athens and got the players from the Wagner car and hauled them to Cleveland, leaving the driver at Athens with instructions to have the car repaired and pick up some of the players at Cleveland. In order for the players to arrive at Fort Benning on Monday night in time for their scheduled game, Coach Edwards and his best players piled into Wagner's car at Cleveland and drove to Atlanta Sunday night and on to Fort Benning Monday. A game was to be played in Atlanta Tuesday night. The second string players were left at Cleveland with instructions to come to Atlanta Monday or as soon as the car was repaired and wait there until the Coach with Wagner and the other players returned from Fort Benning.

When Wagner's car with the Coach and the first team returned to Atlanta from Fort Benning about noon Tuesday they were astonished when the paper, in glaring headlines on the front page, announced that the Milligan College basket ball team was confined in jail. They quickly made investigation and learned that the Hilton car, driven by Charles Onks, which conveyed the delayed members of the team, had reached Atlanta Monday night and, having nothing to do Tuesday morning, the boys had decided on a sight-seeing trip. First, they went to the Federal Penitentiary and then they started to Stone Mountain, a distance of about twenty miles. On the highway from Atlanta to Stone Mountain, while driving at a moderate rate of speed, according to the driver, and while rounding a curve on a wide road, it having been raining, and when the car was about to pass an approaching Ford with two passengers, the last of the tires of the Hilton car blew out and the driver lost control of the car and crashed into the Ford, seriously injuring the driver and damaging the car. Onks was arrested and placed in jail and the Hilton car was attached. Coach Edwards, with the assistance of some friends in Atlanta, succeeded in getting Onks released on a $250 bond. The Hilton car was damaged also. Wagner then telephoned to Johnson City and had another car sent to Chattanooga. Hilton was notified and came to Chattanooga and met Wagner and the players there.

Wagner informed Hilton of the facts and did nothing towards the recovery of the car. Hilton brings this suit to recover the value of the car from Wagner, and Wagner brings a cross action to recover on a breach of warranty for the defective tires. The Chancellor granted a recovery in favor of Hilton for $1000, the fair value of the car, and denied Wagner any relief under his cross-bill. He found in the findings of fact that Onks, who was in charge of the car, "took said automobile to Stone Mountain, on a joy ride, without complainant and cross-defendant's consent," but that Wagner had failed to return the car in the condition he found it, wear and tear

excepted and he was liable to Hilton for its value. Both parties have appealed to this court and assigned error.

This was a contract of bailment, and Mr. Storey defines such a contract as follows:

"According to the foreign and Roman law, the latter by virtue of the contract, impliedly engages to allow to the hirer the full use and enjoyment of the thing hired, and to fulfill all his own engagements and trust in respect to it, according to the original intention of the parties. This implies an obligation to deliver the thing to the hirer; to refrain from every obstruction to the use of it by the hirer during the period of the bailment; and to do no act which would deprive the hirer of the thing; to warrant the title and right of possession to the hirer, in order to enable him to use the thing, or to perform the service; to keep the thing in suitable order and repair for the purposes of the bailment; and, finally, to warrant the thing free from any fault, inconsistent with the proper use or enjoyment of it. These are the main obligations deduced by Ponthier from the nature of contract; and they seem generally founded on unexceptional reasoning." Storey on Bailments, 317.

We are of the opinion that Hilton breached his contract of warranty in that the tires were not free from any fault and were inconsistent with the proper use or enjoyment of the car. He sues for $93, the amount expended for tires after deducting two days hire. We are of the opinion he is entitled to recover the amount sued for.

This does not, however, affect his obligation to return the bailment, and if he has breached his contract also, a recovery may be had against him. His excuse for not returning the bailment is that it was taken from him, without his fault, and while on the mission of another, and is now in the custody of the law, and his only duty to the bailor was to notify him that the car had been taken from him and was in the custody of the law.

The first claim is that the car was not on a mission for the bailee and therefore the bailee was not liable for any damages growing out of the negligent conduct of the driver at the time of the collision. The Chancellor held as a fact that the car was not on a mission for the bailee and this holding is amply supported by the evidence. The authorities support the position of the bailee, that he is not liable for the injury or damages growing out of the collision.

"In Sutherland v. Collins (1904), 1 K. B., 628, it was held by the Court of Appeal that a bailee is not liable for injury to the bailor's carriage taken out by bailee's servant, without the master's knowledge and for a frolic of his own." Note 82, 6 C. J., page 1124.

"In case of Firemen's Fund Insurance Company v. Schreiber, 150 Wis., 42, 135 N. W., 507, 45 L. R. A. (N. S.), 314, and Ann. Cases, 1913E, 823, it was held:

"In case an automobile of the bailor was taken from the bailee's garage by a servant of the bailee, who was in charge of the garage for the night but had no authority to take automobiles out, the bailee under such circumstances was not liable to the bailor." This case was decided by a divided court. But the law in this State is well settled that the master is not responsible for the acts of the servant when the servant is not on a mission for the master. See Gore v. Resha, 140 Tenn., 408, 204 S. W., 1149.

The bailee, Wagner, therefore, was not responsible for the accident, nor liable for the damages, at that·time under the laws of this State, his car could not be taken in payment of the damages incurred by the driver. The presumption is that the law of Georgia is the same as the law of Tennessee, in the absence of proof of what the law of Georgia is. There is no proof in the record that the Georgia law is different from the Tennessee law.

The rule of the duty of the bailee has been announced as ordinary care, or such care as the ordinary man would exercise in his own behalf. The ordinarily prudent man would take steps to reclaim his car in the event it was attached as the property of·another for injuries caused by that other. So if the bailee exercised ordinary care, he would attempt to regain the car. Had he attempted to regain the car and he had been unsuccessful, if he had exercised ordinary diligence, then his duty to the bailor would have been at an end. But the bailee made no attempt to regain the car, relying upon the rule of law that he was relieved of that duty because the car was in the custody of the law.

If the car had been attached for the debt of the bailor there would have been no duty on the bailee to defend the suit to release the attachment. This would have been the bailor's duty, the only duty of the bailee being to notify the bailor that his car had been attached for his debt.

This is not the rule where the attachment is run for the bailee's debt or the debt of another while the car is in the custody of the bailee.

"As has already been noted, the bailee is not estopped to deny the bailor's title where the bailment has been taken from him under legal process; and it may be stated, as a general rule, that the bailee is excused from returning the subject-matter of the bailment where the goods are taken from him by authority of law, exercised through regular and valid proceedings. But a seizure under process, in order to excuse the bailee, must be such as is set in motion directly against the bailor in a suit to which the latter is a party. If the bailee permits the goods in his hands to be attached or levied on as the property of a third person, delivery under such process will afford him no protection.

"After the bailee has negligently allowed the property to pass in the hands of trespassers or persons who have no right to it, a seizure under legal process is not sufficient as an excuse." Bailments, 6 C. J., sec. 95.

The Tennessee cases of Murphy v. Goin, 20 Tenn., 442, Runyan v. Caldwell, 26 Tenn., 135, and R. R. v. Stone, 112 Tenn., 384, 79 S. W., 1031, are in harmony with the rule as stated above.

The rule is that the bailor makes out his case when he shows that the bailee has failed to return the property, and the burden then is upon the bailee to show why he has not returned the property. In this case the bailee has failed to prove a legal excuse for not returning the property. He is, therefore, liable to the bailor for the value of the property which was fixed at $1000 by the Chancellor. There is no error in the decree of the Chancellor upon the original bill, and the decree in this respect is affirmed, but as to the cross-bill, it is reversed, and a recovery granted the bailee for the sum of $93. The costs of the appeal will be equally divided.

## APPENDED OPINION.

PORTRUM, J. Robert Wagner has filed a petition to rehear with the court. His petition was filed on August 8, 1928 but not called to the attention of the court until October 27, which accounts for the delay in the disposition of the petition.

The court held in the opinion that since the automobile in question was not attached for a demand against the bailor, the bailee was not excused because of the legal proceedings to return the car, that it was his duty to exercise ordinary care under the circumstances, which was an attempt to regain the car. The petition to rehear says that the record is silent as to whose demand the attachment was sued out, therefore the ruling of the court does not apply. We think this is a belated contention and one not borne out by the record. The proof shows the circumstances of the accident and that the claim and legal proceedings grew out of the accident. There cannot be any doubt but that the proceeding was not one against the bailor.

The second insistence in the petition is that since the accident did not grow out of the fault of the bailee then the bailee was only answerable to the bailor for the value of the injured automobile which was less than $1000, the recovery decreed. This contention could have been pressed had there been a complaint, or an assignment of error, calling the court's attention to the question. There was no question made upon the amount of the recovery on the trial of this case in this court, and it is too late now, in the absence of an assignment of error going to the particular point, to make the question. In other words, if the parties are content to fight the case upon other

questions, it is too late to raise this question in the petition to re-hear. There was no proof taken upon the value of the car after the accident, so the parties in the lower court failed to make this question.

The petition to rehear is, therefore, overruled and disallowed.

Snodgrass and Thompson, JJ., concur.