DICKSON *et al. v.* BLACKER.

(*Jackson,* April Term, 1952.)

Opinion filed December 5, 1952.

HARRY P. RUBERT and JESS D. EWING, both of Memphis, for petitioner.

NEWTON P. ALLEN and ARMSTRONG, MCCADDEN, ALLEN, BRADEN & GOODMAN, all of Memphis, for respondents.

MR. JUSTICE BURNETT delivered the opinion of the Court.

John W. Dickson has petitioned us for a certiorari from an adverse judgment of the Court of Appeals (Western Section) in affirming a judgment against him by the trial court.

The only question for our determination is : Is a master responsible to an injured third party for the unauthorized tort of the master's servant committed outside of the scope of his employment, where there is a contractual relationship between the master and the injured third party?

The two lower courts answered this in the affirmative under the following state of facts. The petitioner operates a filling station in the city of Memphis and along with this filling station he also operates a parking lot which is located about a block and one half away from the filling station. The station was operated for the usual service of cars and for storage of cars in connection with the parking lot. Customers, as did the respondent herein,

left their cars at the filling station for storage. The practice was to drive the cars from the filling station to the parking lot where the car was parked and then the keys to the car were brought back and put on a board in the filling station.

The respondent was a traveling salesman. On September 17, 1950, he delivered his wife's automobile into the custody of the defendant at the defendant's filling station. The agreed price for storage was 75¢ per day. No parking or storage receipt was given to him. The plaintiff had parked his car with the defendant station on at least two previous occasions. There was no discussion between the parties as to whether or not the car would be moved from the filling station to the parking lot.

The respondent stayed in a local hotel in Memphis for three days, conducting his business there in a hotel room. He did not use his car during this time or go back to the filling station. On September 20th he returned for the car and was informed that the car was in a wrecked condition and that one of the defendant's employees had taken the car. The respondent and the defendant went to the police station where they found the car in a wrecked condition.

About three months prior to the events above related the defendant had employed one Calvin Coolidge Mitchell, colored. Mitchell's duty was to take the cars from the filling station to the defendant's parking lot and return with the keys to the car which were then placed on the board in the filling station; it was also his duty to go to the parking lot and return with the cars at night for storage.

On the evening of September 19th before 6:30 P.M., the defendant's employee who was in charge of the fill-

ing station sent Mitchell to bring the respondent's car from the parking lot to the filling station. Shortly after the employee Mitchell was sent for this car the supervisors of the filling station changed and at the time that they changed the supervisor who was going off duty informed the one coming on duty that Mitchell had not returned with the car and was overdue. After receiving this information the filling station owner was notified and the police in turn were notified. On that same night Mitchell, the colored employee, came to the filling station and stated that he had wrecked the car in South Memphis some blocks away from the station and took his clothes and ran off.

The automobile was found about 6 blocks from the filling station where it had been run into a telephone post and wrecked. The evidence in the record is that this colored employee driving the car at a very rapid rate of speed around a curve had run it into a telephone post and wrecked it. The filling station owner (petitioner here) swore out a warrant against the colored employee for using the car without the owner's consent but the colored employee, according to the record, has never been apprehended.

The case was tried to a jury. At the conclusion of all the evidence both parties moved for a directed verdict in their favor. The motion on behalf of the respondent (owner of the car) was granted and that on behalf of the petitioner (filling station operator) was denied. The matter was then submitted to the jury on the question of damages and a verdict was rendered on behalf of the owner of the car. This verdict was affirmed by the Court of Appeals and the matter is now before us as heretofore said petitioning for certiorari.

The insistence of the petitioner is that the doctrine of respondeat superior as applied in cases of master and servant controls and that the master is not responsible to a third party for injury or damage by his servant when the servant injures the property in an unauthorized act outside the scope of his employment.

Under the contract of bailment between the plaintiff and the defendant, the defendant was not an insurer of the safety of the automobile, but was bound to exercise ordinary care for its safety. If, in the performance of that duty, he chose to delegate such performance to his servant he is responsible to the bailor for the manner in which it is performed, as if he had performed it himself, and whether or not the servant was acting outside the scope of his employment. This was held by the Western Division of the Court of Appeals in *Roths Central Garage* v. *Holmes,* 10 Tenn. App. 500. In that case the Court of Appeals quoted with approval from an opinion of this Court in *Pullman Palace Car Co* v. *Gavin,* 93 Tenn. 53, 23 S. W. 70, 21 L. R. A. 298 as follows:

"When by contract or statute the master is bound to do certain things, if he intrusts the performance of that duty to another, he becomes absolutely responsible for the manner in which the duty is performed, precisely the same as though he himself had performed it, and that without any reference to the question whether the servant was authorized to do the particular act. Where the master, by contract or operation of law, is bound to do certain acts, he cannot excuse himself from liability upon the ground that he has committed that duty to another, and that he never authorized such person to do the particular act. Being bound to do the act, if he does it by an-

other, he is treated as having done it himself, and the fact that his servant or agent acted contrary to his instructions, without his consent, or even fraudulently, will not excuse him.''

It is very forcefully argued in the petition that the *Pullman Palace Car Co.* v. *Gavin* case above quoted from is inapplicable because the law as there applied was applied to Pullman Car Companies where the high degree of care was imposed upon them. This is an erroneous argument because the Pullman Company is liable *only* for ordinary care, *St. Louis, I. M. & S. R. Co.* v. *Hatch,* 116 Tenn. 580, 590, 94 S. W. 671 and it is neither a carrier nor innkeeper. It is likewise argued that in cases of this kind only ordinary care is imposed on the bailee. The petitioner also cites two cases by the Eastern Division of the Court of Appeals which according to the petition hold contra to that of the Western Division. These two cases are *Hilton* v. *Wagner,* 10 Tenn. App. 173, and *Malone* v. *Harth,* 12 Tenn. App. 687. These two cases should be confined to the particular facts developed in those cases and should not be considered as setting down a rule to be followed under modern conditions in cases of this kind. Insofar as they hold contra to the Roth case above referred to and the quotation that we have quoted from the Pullman Palace Car case we hold that they are not authority and that those opinions should be confined strictly to the facts of those cases.

██ Under the view we take of this case such a holding does not make a garage keeper an insurer of the property of the automobile owner. If the automobile had been damaged through no fault of the garage keeper or his servant but through the fault of a third party over whom the garage keeper had no control then clearly

the garage keeper would not be liable. Under the view that we take of the matter (this being the same view of the two lower courts) the garage keeper merely becomes liable for the acts of his servants regardless of whether these acts were committed within or without the scope of the servant's employment. The damage to the car was due to the tort of the servant of the garage keeper. There was an abundance of evidence in the record that this servant was guilty of negligent, careless operation of the plaintiff's automobile. He drove around a 90-degree corner at such a speed as to lay down 25 feet of tire marks. The automobile made a screeching noise as it rounded the corner and defendant's servant drove it into a telephone post. He later returned to his employer, the garage keeper, and admitted that he had wrecked the car.

In modern times the motorist puts his automobile in the hands of a garage keeper or parking lot operator for safe keeping almost daily and it remains there anywhere from one hour to extended periods of time. The parking lot or garage is almost always in charge of an employee. The automobile owner is therefore at the mercy of the garage keeper's servants. To allow the garage keeper to escape liability for the unauthorized tort of his servant would under the circumstances as set forth in this case be a failure of justice. We therefore conclude that the lower courts were correct and that petition for certiorari should be denied.

PREWITT, J., not participating.